[978 NYS2d 456]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHAR-
LIE ROBLES, Appellant.

Third Department, January 16, 2014

### APPEARANCES OF COUNSEL

*Matthew C. Hug*, Troy, for appellant.

*P. David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for respondent.

### OPINION OF THE COURT

PETERS, P.J.

Defendant was indicted for burglary in the first degree and robbery in the first degree in connection with a home invasion in the City of Albany. Following a jury trial, he was convicted as charged and sentenced to two concurrent prison terms of 18 years to be followed by five years of postrelease supervision. He now appeals.

■ We reject defendant's argument that the verdict was against the weight of the evidence. The sole substantive issue at trial was the identity of the perpetrator. The 91-year-old victim testified that a masked intruder entered her home with a knife, tied her hands together and ransacked her home searching for money and jewelry. She explained that the man ultimately discovered and stole over $30,000 in cash that she had been saving for over 60 years. Testimony was presented that, shortly after the invasion, defendant was seen with bags containing an undetermined quantity of money that was described as looking "old," purchased a plane ticket to Puerto Rico and wired $1,000 to himself there. The People also introduced the testimony of Albert Surillo, a friend of defendant and his family, as well as a transcript of a police-arranged recorded telephone conversation that Surillo had with defendant approximately a month after the robbery. During this conversation, defendant stated that he had stolen a large sum of cash from an elderly woman during the course of a robbery and made several other inculpatory

statements identifying himself as the perpetrator.[1] While this conversation was not recorded in the presence of the police, and Surillo—who had pending charges against him reduced in exchange for his cooperation—was the only person to identify defendant's voice, these circumstances were fully explored during the trial and presented for the jury's consideration (see *People v Estella*, 107 AD3d 1029, 1031 [2013], *lv denied* 21 NY3d 1042 [2013]; *People v Heard*, 92 AD3d 1142, 1144 [2012], *lv denied* 18 NY3d 994 [2012]; *People v Thaddies*, 50 AD3d 1249, 1250 [2008], *lv denied* 10 NY3d 965 [2008]). "Evaluating the evidence in a neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while giving due deference to the jury's credibility determinations" (*People v Callicut*, 101 AD3d 1256, 1259 [2012], *lv denied* 20 NY3d 1096, 1097 [2013]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Bleakley*, 69 NY2d 490, 495 [1987]), we find that the jury's verdict is supported by the weight of the evidence.

■ As defendant was being transported from the courtroom to the jail at the conclusion of the second day of trial, a deputy sheriff slipped a religious tract into defendant's pocket. The document acknowledged defendant's legal right to remain silent, but exhorted him to forgo that right and confess. "Yes, you have the right to remain silent," it stated. "You have the right to remain in your sins. But please don't. Your conscience testifies against you. Confess your sins" or "spend eternity in a prison called hell."[2] When the parties appeared before Supreme Court the following day, defense counsel moved for a mistrial, arguing that the deputy's actions constituted official interference with defendant's decision on whether to testify. Noting that the jury was not aware of the incident and concluding that the pamphlet should not "affect the defendant one iota," Supreme Court denied the motion. Defendant ultimately elected not to testify. On appeal, defendant asserts that the deputy sheriff's attempt to tamper with and influence his decision to testify served to deprive him of a fair trial.

Our analysis begins with the fundamental precept that a criminal defendant has the right to testify in his or her own defense

---

1. Although the conversation was in Spanish, the audio recording was transcribed into English.

2. The religious tract was created by Ten-Four Ministries, "a Christian based ministry directed towards first responders with a specific emphasis in reaching the law enforcement profession for Jesus Christ" (Ten Four Ministries, http://www.tenfourministries.org/ [accessed Dec. 23, 2013]).

guaranteed by the Federal and State Constitutions (*see Rock v Arkansas*, 483 US 44, 51-53 [1987]; *Jones v Barnes*, 463 US 745, 751 [1983]; *Bennett v United States*, 663 F3d 71, 84 [2d Cir 2011]; *People v Terry*, 309 AD2d 973, 974 [2003]). This fundamental "right to testify is 'personal' and . . . can be waived only by the defendant," and any such waiver must be knowingly, voluntarily and intelligently made (*Chang v United States*, 250 F3d 79, 82 [2d Cir 2001]; *see United States v Leggett*, 162 F3d 237, 245-246 [3d Cir 1998], *cert denied* 528 US 868 [1999]; *Brown v Artuz*, 124 F3d 73, 78-79 [2d Cir 1997], *cert denied* 522 US 1128 [1998]; *United States v Pennycooke*, 65 F3d 9, 11 [3d Cir 1995]). To be sure, the "trial court does not have a general obligation to sua sponte ascertain if the defendant's failure to testify was a voluntary and intelligent waiver of his [or her] right" (*People v Dolan*, 2 AD3d 745, 746 [2003], *lv denied* 2 NY3d 798 [2004]; *see People v Cosby*, 82 AD3d 63, 66 [2011], *lv denied* 16 NY3d 857 [2011]). However, "in exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected" (*United States v Pennycooke*, 65 F3d at 12; *see United States v Hung Thien Ly*, 646 F3d 1307, 1317 [11th Cir 2011]; *United States v Leggett*, 162 F3d at 247; *United States v Dryden*, 141 F3d 1186 [10th Cir 1998] [table; text at 1998 WL 104724, 1998 US App LEXIS 4186 (1998)]; *Ortega v O'Leary*, 843 F2d 258, 261 [7th Cir 1988], *cert denied* 488 US 841 [1988]; *People v Dolan*, 2 AD3d at 746).

We believe that such colloquy was critically necessary here. The privilege against self-incrimination—and, by extension, the decision whether to waive that privilege and testify—"is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion' " (*Colorado v Connelly*, 479 US 157, 170 [1986], quoting *Oregon v Elstad*, 470 US 298, 305 [1985]). But here the deputy's actions in foisting the religious tract upon defendant constituted an effort by law enforcement to "interfere[ ] with the free and unhampered decision of [defendant] to testify" (*People v Webb*, 195 AD2d 614, 615 [1993], *lv denied* 82 NY2d 808 [1993]; *see United States v Pinto*, 850 F2d 927, 932 [2d Cir 1988], *certs denied* 488 US 867, 932 [1988]; *Andrews v State*, 443 So 2d 78, 84 [Fla 1983]). Moreover, looking at "factors beyond the government's control to determine whether [defendant's] decision not to testify resulted from the government's conduct," defendant allegedly knew "chapter and verse" the biblical quotations in the

tract, making defense counsel concerned that he was peculiarly susceptible to the exhortation made (*United States v Pinto*, 850 F2d at 932).

Thus, while the mistrial requested by defendant was properly denied, the appalling conduct by the deputy "trigger[ed] [the] court's duty to discuss with . . . defendant his decision of whether to testify" (*United States v Hung Thien Ly*, 646 F3d at 1317; *see Ortega v O'Leary*, 843 F2d at 263). We find that Supreme Court fulfilled that duty here. After the People rested their direct case on the third day of trial, defense counsel requested an adjournment to locate a defense witness and indicated that he did not anticipate that defendant would be testifying. At that point, the following colloquy took place between Supreme Court and defendant:

> "THE COURT: There's one other thing I'm going to cover, then, before I bring the jurors back in. I am going to address the defendant. . . . I'm going to address the issue as to the defendant having a right to testify and a right not to testify. So, Mr. Robles, do you understand that you have a right to testify as a witness in your own behalf at this trial?

> "THE DEFENDANT: Yes, Your Honor.

> "THE COURT: And you also understand that you have a right to remain silent, which means you have a right not to testify during this trial, You understand that?

> "THE DEFENDANT: Yes, Your Honor.

> "THE COURT: And if you don't testify, if you request it through your attorney, you have the right to have the jury instructed that the fact that the defendant did not testify is not a factor from which any inference unfavorable to the defendant may be drawn.

> "THE DEFENDANT: Yes, Your Honor.

> "THE COURT: And, Mr. Robles, I am not going to ask you now whether you're going to testify or not. I'm not going to ask you that. What I am going to ask you is that you and [defense counsel] talk about this issue and that's between him and you. It's confidential. Do you understand that the decision as to whether you testify as a witness in your own

behalf at this trial or don't testify as a witness in your own behalf at this trial is your decision and your decision alone.

"THE DEFENDANT: I understand, Your Honor.

"THE COURT: And do you understand that although [defense counsel] may or should advise you, you do understand that it's not his decision as to whether you actually do or don't testify. It's your decision.

"THE DEFENDANT: I understand, Your Honor.

"THE COURT: And two last questions. If you do not testify during this trial, can the Court be assured that it's you that's made the final decision that you don't wish to testify?

"THE DEFENDANT: I would have to talk to my attorney.

"THE COURT: I know that, but so I don't ask you any other questions about whether [you're] going to do it, I'm going to ask you if you don't testify, can we be assured that you've made that decision and if you testify, can we be assured that it was you that made the decision.

"THE DEFENDANT: That's correct."

In our view, this thorough and detailed colloquy concerning defendant's rights as they relate to his decision to testify was both adequate to safeguard the sanctity of defendant's fundamental right to testify and sufficient to ensure that his ultimate decision not to testify represented an "unfettered exercise of his own will" untainted by governmental interference (*Malloy v Hogan*, 378 US 1, 8 [1964]; *accord Rock v Arkansas*, 483 US at 53; *see United States v Pablo*, 696 F3d 1280, 1296 [10th Cir 2012]; *Provence v State*, 337 So 2d 783, 786 [Fla 1976], *cert denied* 431 US 969 [1977]). Thus, despite the unusual—and perhaps unprecedented—circumstances presented in this case, we cannot say that defendant's right to a fair trial was compromised or that reversal is otherwise warranted on the basis of the indefensible conduct of the deputy sheriff.

 Defendant next contends that he was denied the effective assistance of counsel because his trial attorney, in his capacity as a public defender, had briefly represented Surillo on the pending drug charges that he was seeking to have reduced through cooperation with the People in this case. We disagree. Defense

counsel's representation of Surillo terminated prior to the date of the robbery, such that the representation was not simultaneous, and Surillo was represented by a private attorney when he agreed to be a cooperating witness (*compare People v Mattison*, 67 NY2d 462, 470 [1986], *cert denied* 479 US 984 [1986]). While defense counsel's prior representation of Surillo demonstrated the existence of a potential conflict (*see People v Ortiz*, 76 NY2d 652, 656-657 [1990]), defendant has not demonstrated that " 'the conduct of his defense was in fact affected by the operation of the conflict of interest,' or that the conflict 'operated on' the representation" (*id.* at 657, quoting *People v Alicea*, 61 NY2d 23, 31 [1983]; *see People v Harris*, 99 NY2d 202, 210 [2002]; *People v Kennedy*, 78 AD3d 1233, 1236 [2010], *lv denied* 16 NY3d 896 [2011]). Notably, Surillo waived the attorney-client privilege between himself and defendant's counsel, thereby terminating any duty of confidentiality owed to him by defendant's counsel, and his consent to cross-examination obviated any potential conflict (*see People v Harris*, 99 NY2d at 211; *People v Lombardo*, 61 NY2d 97, 103 [1984]).

Defendant's remaining contentions do not require extended discussion. Evidence of defendant's flight to Puerto Rico three days after the robbery provided a sufficient basis for the consciousness of guilt charge given here (*see People v Arriaga*, 77 AD3d 846, 847 [2010], *lv denied* 16 NY3d 796 [2011]; *People v Lockerby*, 178 AD2d 805, 807 [1991], *lv denied* 80 NY2d 834 [1992]), and Supreme Court properly left to the jury the question of whether such evidence indicated consciousness of guilt, cautioning that consciousness of guilt evidence is of slight value and may never alone form the basis for a guilty verdict (*see People v Yazum*, 13 NY2d 302, 304 [1963]; *People v Carney*, 23 AD3d 772, 774-775 [2005]; *People v Lockerby*, 178 AD2d at 807; *People v Shepherd*, 176 AD2d 369, 370 [1991], *lv denied* 79 NY2d 832 [1991]). Finally, given the violent nature of this home invasion and the impact it had upon the elderly victim, we find no extraordinary circumstances or abuse of discretion warranting modification of the sentences, each of which was significantly less than the maximum term to which defendant was exposed (*see People v Bush*, 75 AD3d 917, 920 [2010], *lv denied* 15 NY3d 919 [2010]; *People v Perkins*, 56 AD3d 944, 946 [2008], *lv denied* 12 NY3d 786 [2009]).

LAHTINEN, STEIN and EGAN JR., JJ., concur.

Ordered that the judgment is affirmed.