# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1208**
**KA 13-01360**
PRESENT: SMITH, J.P., LINDLEY, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                        MEMORANDUM AND ORDER

MICHAEL A. PILATO, DEFENDANT-APPELLANT.

---

LAW OFFICES OF MATTHEW J. RICH, P.C., ROCHESTER (MATTHEW J. RICH OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered July 24, 2013. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (six counts), attempted murder in the second degree (two counts) and arson in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of three counts each of intentional murder in the second degree (Penal Law § 125.25 [1]) and felony murder in the second degree (§ 125.25 [3]), two counts of attempted murder in the second degree (§§ 110.00, 125.25 [1]) and one count of arson in the second degree (§ 150.15) based on allegations that he intentionally set fire to his family's residence in the middle of the night, killing three of the five family members who were inside the residence at the time.

When the matter proceeded to trial, defense counsel relied heavily on the affirmative defense of extreme emotional disturbance (EED defense) (*see* Penal Law § 125.25 [1] [a]), but it is well settled that "[o]nly subdivision (1) [of section 125.25], dealing with intentional murder, contains a provision for mitigation of the charge by the affirmative defense of extreme emotional disturbance" (*People v Fardan*, 82 NY2d 638, 642; *see People v Royster*, 43 AD3d 758, 759, *lv denied* 9 NY3d 1009). Defendant thus contends that he was denied effective assistance of counsel on the ground that, by pursuing the EED defense, counsel effectively conceded defendant's guilt to the entire indictment, resulting in the functional equivalent of a guilty plea. We reject that contention.

Here, there was no real issue at trial concerning who had started

the fire at defendant's residence.  Defendant admitted to a friend and his sister's boyfriend that he had started the fire, revealing particulars that no one but the perpetrator could have known, and he reeked of gasoline when he was taken into custody within hours after the fire erupted.  In addition, defendant confessed his guilt to the police.  Although County Court suppressed the confession, it ruled that defendant's statements to the police could be used by the People for impeachment purposes at trial if defendant testified that he did not start the fire.  Defense counsel thus had "limited options for advancing a viable defense" (*People v Green*, 187 AD2d 259, 259, *lv denied* 81 NY2d 762).  Inasmuch as "[t]he evidence of defendant's guilt was overwhelming, and '[c]ounsel may not be expected to create a defense when it does not exist' " (*People v Taussi-Casucci*, 57 AD3d 209, 210, *lv denied* 12 NY3d 788), we conclude under the circumstances of this case that defendant received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

Although defendant contends that defense counsel was unaware that the EED defense did not apply to felony murder, the record does not support that contention.  Defendant, who was 15 years old at the time of the offenses, was charged as a juvenile offender (*see* CPL 1.20 [42] [2]).  As opposed to adults charged with both intentional and felony murder, juvenile offenders face different sentencing minimums for the two offenses (*compare* Penal Law § 70.00 [2] [a]; [3] [a] [i] *with* § 70.05 [3] [a]).  That disparity in the sentencing minimums establishes that it was reasonable for defense counsel to pursue a strategy focused on obtaining an acquittal on the intentional murder counts, even at the expense of exposing defendant to an all but certain felony murder conviction.  Had defense counsel's "strategy been successful, defendant would have been eligible for a considerably lower sentence" (*People v Frascone*, 271 AD2d 333, 333).  We thus conclude that, contrary to defendant's contentions, defense counsel's strategy did not amount to the functional equivalent of a guilty plea (*see People v Washington* [appeal No. 2], 19 AD3d 1180, 1180-1181, *lv denied* 5 NY3d 833; *People v Barnes*, 249 AD2d 227, 228, *lv denied* 92 NY2d 893; *cf. People v Barbot*, 133 AD2d 274, 275-276), and the court did not err in failing to conduct a colloquy with defendant to determine whether he expressly consented to that strategy (*see Washington*, 19 AD3d at 1180-1181; *People v Chaney*, 284 AD2d 998, 998, *lv denied* 96 NY2d 917).  Defendant's heavy reliance on *Washington* (5 Misc 3d 957, 957, *revd* 19 AD3d 1180) is misplaced inasmuch as there is no evidence on this record that defense counsel pursued such a strategy "without defendant's consent" (19 AD3d at 1180).  We have reviewed defendant's remaining challenges to the effectiveness of counsel and conclude that they lack merit (*see generally People v Caban*, 5 NY3d 143, 152).

Contrary to the contention of defendant, the court did not err in denying defense counsel's requests to dismiss the felony murder counts under the merger doctrine (*see People v Steen*, 107 AD3d 1608, 1609, *lv denied* 22 NY3d 959; *People v Couser*, 12 AD3d 1040, 1041, *lv denied* 4 NY3d 762), or to charge the jury on the EED defense with respect to those counts (*see Fardan*, 82 NY2d at 642; *Royster*, 43 AD3d at 759).

Defendant further contends that he was denied his right to testify in his own defense at trial.  Even assuming, arguendo, that defendant was not required to preserve that contention for our review, we conclude that it lacks merit.  Although there is a "fundamental precept that a criminal defendant has the right to testify in his or her own defense guaranteed by the Federal and State Constitutions" (*People v Robles*, 115 AD3d 30, 33-34, *lv denied* 22 NY3d 1202, *reconsideration denied* 23 NY3d 1042), it is well settled that, ordinarily, "the 'trial court does not have a general obligation to sua sponte ascertain if the defendant's failure to testify was a voluntary and intelligent waiver of his [or her] right' " (*id.* at 34; *see generally People v Fratta*, 83 NY2d 771, 772).  Contrary to defendant's contention, this case does not present any of the " 'exceptional, narrowly defined circumstances' " in which " 'judicial interjection through a direct colloquy with the defendant [would] be required to ensure that the defendant's right to testify is protected' " (*Robles*, 115 AD3d at 34; *see Brown v Artuz*, 124 F3d 73, 79 n 2, *cert denied* 522 US 1128).

Although defendant contends that he was denied a fair trial by prosecutorial misconduct on summation, he concedes that his contention is not preserved for our review inasmuch as defense counsel made no objection to any of the challenged comments (*see People v Glenn*, 72 AD3d 1567, 1568, *lv denied* 15 NY3d 805).  We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

Defendant failed to preserve for our review his contention that the conviction is not supported by legally sufficient evidence inasmuch as he failed to make a sufficiently specific motion to dismiss (*see People v Gray*, 86 NY2d 10, 19) and, moreover, he failed to renew his motion after presenting evidence (*see People v Hines*, 97 NY2d 56, 61, *rearg denied* 97 NY2d 678).  In any event, we reject defendant's contention that the conviction is not supported by legally sufficient evidence (*see generally People v Bleakley*, 69 NY2d 490, 495) and, upon viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we conclude that the verdict is not against the weight of the evidence (*see Bleakley*, 69 NY2d at 495).

Finally, we address defendant's contentions concerning the sentence.  We conclude that New York's sentencing statutes, which provide for indeterminate life sentences for juvenile offenders convicted of the crimes of murder of which defendant was convicted, do not violate the state or federal prohibitions against cruel and unusual punishment (*see People v Taylor*, 136 AD3d 1331, 1332-1333, *lv denied* 27 NY3d 1075; *cf. Miller v Alabama*, ___ US ___, ___, 132 S Ct 2455, 2460), and we further conclude that the sentence is not unduly harsh or severe.

Entered:  December 23, 2016                    Frances E. Cafarell
                                               Clerk of the Court