■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDY MERCADO, Appellant. [48 NYS3d 81]—

Order, Supreme Court, New York County (Daniel P. FitzGerald, J.), entered on or about April 17, 2015, which summarily denied defendant's CPL 440.10 motion to vacate the judgment of conviction, reversed, on the law, and the motion granted to the extent of remanding the matter for a hearing on defendant's claim of ineffective assistance of counsel and a decision de novo on the motion. Appeal from judgment, same court and Justice, rendered May 18, 2012, as amended May 29, 2012, convicting defendant, after a jury trial, of burglary in the second degree and two counts of robbery in the second degree, and sentencing him, as a second felony offender, to concurrent terms of 13 years, held in abeyance pending the aforesaid hearing and decision.

Prior to jury selection, the court began a *Sandoval* hearing. At the hearing, the People stated that defendant had been convicted of a number of prior crimes. The court asked the People to obtain further details about some of the convictions, and adjourned the hearing to the following week. At the resumed *Sandoval* hearing, the People provided additional information about defendant's criminal history. The court, however, again adjourned the hearing because a panel of prospective jurors was about to be brought into the courtroom. The court stated that it would resume the hearing at a later point, but never did. The court did not thereafter make a *Sandoval* ruling, and defendant did not testify at trial.

After sentencing, defendant moved, pursuant to CPL 440.10, to vacate the judgment of conviction based on ineffective assistance of counsel.* Defendant argued, among other things, that his trial counsel provided inadequate representation by failing to ask the court to resume the *Sandoval* hearing and render a *Sandoval* decision. In support of the motion, defendant submitted an affidavit stating that he wanted to testify at trial, but did not have the opportunity to decide whether it was wise to do so because of trial counsel's failure to obtain a *Sandoval* ruling. Defendant further stated that when he told trial counsel that he wanted to testify, counsel threatened to "leave the case." Trial counsel also allegedly told defendant that he should not testify because "everything about [his] past would come up." Joseph C. Heinzmann, Jr., defendant's 440.10 counsel, submitted an affirmation stating that trial counsel rebuffed his attempts to obtain information about the case, and made clear that he would not "cooperate with [the 440.10] motion." Trial counsel did not submit an affirmation in support of defendant's motion.

In denying defendant's motion, the motion court in its written decision noted that at some unspecified time after the *Sandoval* hearing was postponed the second time, "[d]efense counsel . . . informed the court that the defendant was not going to testify, but in the event that changed, that the *Sandoval* hearing could be continued beforehand." The court concluded that, under the circumstances, trial counsel could not be deemed ineffective for agreeing to delay a ruling on the *Sandoval* motion. A Justice of this Court granted defendant leave to appeal, and we now reverse.

Defendant's moving papers were sufficient to warrant a hear-

---

* Defendant also sought to vacate the judgment based on newly discovered evidence. On appeal, defendant does not challenge the motion court's denial of that aspect of the motion.

ing on the motion. Factual issues exist as to whether defendant was deprived of effective assistance of counsel due to trial counsel's failure to ask the court to render a *Sandoval* ruling. Although the court's written decision indicates that trial counsel told the court that defendant would not be testifying, the record does not reflect that colloquy. The court's decision does not shed any light on whether trial counsel's representation was made in writing, by telephone or in person. More importantly, it is unknown whether defendant was present when trial counsel's statement was made, whether defendant had consented to counsel's making such a representation, or whether defendant had any knowledge of counsel's statement to the court. Notably, the People's response to the 440.10 motion is silent as to whether trial counsel made any such representation to the court.

It is well established that a defendant who is represented by counsel nevertheless retains authority over certain fundamental decisions regarding the case, including the decision whether to testify in his or her behalf (*see Rock v Arkansas*, 483 US 44, 53 n 10 [1987]; *People v Hogan*, 26 NY3d 779, 786 [2016]). The decision to testify in one's behalf is personal and can be waived only by the defendant, not counsel alone (*see People v Robles*, 115 AD3d 30, 34 [3d Dept 2014], *lv denied* 22 NY3d 1202 [2014]). Defendant's affidavit submitted with the 440.10 motion made clear that he informed trial counsel that he wished to testify, depending on the outcome of the *Sandoval* hearing. In light of this affidavit, a hearing is required to more fully explore the circumstances surrounding trial counsel's alleged representation to the court that defendant would not be testifying, and whether defendant was aware of, and concurred with, that decision.

The hearing on remand should also address defendant's claim that trial counsel was ineffective for failing to retain and consult with an expert about the DNA evidence in the case, which was the critical evidence linking defendant to the crime. Defendant maintains that trial counsel's failure to consult a DNA expert limited his ability to effectively cross-examine the People's DNA expert (*see People v Oliveras*, 21 NY3d 339, 346 [2013] ["[e]ssential to any representation, and to the attorney's consideration of the best course of action on behalf of the client, is the attorney's investigation of the law, the facts, and the issues that are relevant to the case"]).

In his affidavit, defendant stated that his family had given trial counsel $1,500 to hire a DNA expert to better understand the DNA evidence, but that counsel did not hire any such

expert. Defendant's brother submitted an affidavit stating that he personally gave trial counsel the $1,500 for the expert. The affirmation of 440.10 counsel Heinzmann stated that trial counsel claimed to have consulted with "someone in Ohio" about the DNA evidence, but never provided that person's name. Heinzmann also stated that trial counsel's file contained nothing to suggest a review of the DNA evidence in the case. Further, the file had no names or contact information for any DNA consultant, and contained no telephone numbers correlating to Ohio area codes.

Defendant also submitted the affidavit of Eric J. Carita, a forensic DNA consultant, who reviewed the DNA evidence and the trial testimony, and opined that, had defendant hired a forensic DNA expert, trial counsel could have mounted a more effective defense. For example, Carita stated that the report and testimony of the People's DNA expert failed to provide a match rarity statistic for some of her DNA comparisons. Carita also stated that the People's expert erroneously testified that there were no alleles, on a certain item of evidence, that were foreign to either defendant or the victim. According to Carita, if trial counsel had retained a DNA expert, he could have more effectively cross-examined the People's DNA expert on these matters. In light of the affidavits submitted on the 440.10 motion, factual issues exist as to whether trial counsel retained a DNA expert, and if not, whether there existed strategic or other reasons for how trial counsel approached the DNA evidence (*see People v Garcia*, 137 AD2d 402, 406 [1st Dept 1988] [remanding for 440.10 hearing where it was not clear from the record whether defense counsel's failure to raise an issue was due to ineffectiveness of counsel or trial strategy]).

The dissent argues that no hearing is necessary because "the alleged deficiencies in trial counsel's performance . . . could not have affected the result of the trial." That, however, is not the standard for reviewing claims of ineffective assistance of counsel under the State Constitution. New York "refuse[s] to apply the harmless error doctrine in cases involving substantiated claims of ineffective assistance" (*People v Benevento*, 91 NY2d 708, 714 [1998]). Although whether a defendant would have been acquitted but for counsel's errors is relevant, a state claim of ineffective assistance "is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*id.*). "Thus, under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial" (*People v Caban*, 5 NY3d 143, 156 [2005]).

In focusing on the fundamental fairness of the process, the Court in *Benevento* emphasized that "our legal system is concerned as much with the integrity of the judicial process as with the issue of guilt or innocence" (91 NY2d at 714, quoting *People v Donovan*, 13 NY2d 148, 154 [1963]). In order to properly assess whether defendant here was deprived of a fair trial, a hearing is necessary to further explore the purported errors committed by trial counsel. As noted, defendant makes a number of serious allegations, including that trial counsel threatened to "leave the case" if defendant were to testify, and told defendant that his entire criminal history would come up if he testified, even though no *Sandoval* ruling had been rendered. We also note that in his direct appeal, which we are holding in abeyance pending the hearing, defendant raises a number of other ineffectiveness claims based on alleged errors and omissions during the course of the trial. We believe the more prudent course of action here is to examine defendant's ineffectiveness claim in toto, upon a full record, after a hearing.

Contrary to the dissent's view, we are not ordering a hearing based on "an exceedingly generous reading" of defendant's affidavit. In fact, defendant explicitly stated he "told [trial] counsel that [he] wanted to testify" but "never had the opportunity to decide whether it would be a good idea . . . to testify based on how much of [his] criminal record the jury would hear because [he] never got a court decision on [his] motion." Defendant also stated that trial counsel "kept [him] off the witness stand by threatening to leave the case and using [his] record against [him], even though the court never made that ruling." These statements cannot be reconciled with the dissent's conclusion that "trial counsel prevailed upon [defendant] to drop the idea of taking the stand in his own defense." In urging that no hearing is necessary, the dissent gives short shrift to defendant's serious allegations against trial counsel.

As noted, the record here is unclear as to whether defendant himself made the decision not to testify in his own behalf, or whether counsel made that decision without defendant's input. The dissent recognizes that trial counsel was required to have consulted with defendant about whether defendant wished to exercise his right to testify. However, by concluding that no hearing is required, the dissent effectively ignores the questions as to how and when the trial court was purportedly informed that defendant would not testify, whether defendant was aware of this communication, and whether defendant agreed with that decision. The dissent also mistakenly sug-

gests that we are concluding that a defense lawyer who advises a defendant not to testify, despite defendant's wish to do so, is ineffective. We come to no such conclusion, but simply remand for an evidentiary hearing on the ineffectiveness claim.

The dissent faults defendant for not having asked trial counsel to request that the court render a *Sandoval* decision. It was not defendant's responsibility, however, to remind trial counsel to do his job. Requiring a criminal defendant to bring legal issues to counsel's attention would turn an ineffective assistance claim on its head. Contrary to the dissent's position, the fact that defendant had a criminal record has nothing to do with whether trial counsel was ineffective in not obtaining a *Sandoval* ruling. A defendant with a criminal past has no less of a right to the effective assistance of counsel than a first-time offender. Moreover, the very purpose of a *Sandoval* ruling is to ensure that a defendant who does have a criminal record knows what the consequences of his testifying will be.

The dissent makes reference to whether the trial court committed error by failing to make a *Sandoval* determination and whether any such error would be harmless. Because we are holding defendant's direct appeal in abeyance, we do not address the merits of defendant's claims in this regard. We do believe, however, that the questions of whether the trial court erred in not ruling on defendant's *Sandoval* request, and whether trial counsel was ineffective by not asking the court to make a ruling, are intertwined and are best resolved together, after the hearing we are ordering. Concur—Richter, Moskowitz and Kapnick, JJ.

Friedman, J.P., and Saxe, J., dissent in a memorandum by Friedman, J.P., as follows: At about 4:00 a.m. on April 2, 2009, three masked men assaulted a young man as he was returning to the first-floor apartment where he lived with his 72-year-old grandfather. The assailants forced the young man to let them into the apartment, where they handcuffed him and his grandfather with orange plastic zip ties. They forced the young man to open a safe, from which they took $1,600 in cash, a gold watch worth about $5,000, and a coin collection worth about $10,000. The men, whom the victims could not identify due to their masks, absconded with the valuables from the safe, among other items.

When the police arrived, they found on the living room table a number of sets of orange plastic zip ties, such as had been used as handcuffs on the victims. One of these zip ties (subsequently identified as trial exhibits 3A-3B) had DNA material on it that was an exact match of defendant's DNA,

the profile of which was in the law enforcement database as a result of his earlier offenses. Defendant was arrested and, after a jury trial at which he was represented by retained counsel, was convicted of burglary in the second degree and two counts of robbery in the second degree.

On this consolidated appeal by defendant from the judgment of conviction and from the denial of his postjudgment motion (brought by appellate counsel) to set aside the conviction pursuant to CPL 440.10, the majority remands this matter for a hearing on whether defendant received effective assistance of counsel at his trial. In my view, there is no need for such a hearing. Even if all factual issues concerning the representation are resolved in defendant's favor, the alleged deficiencies in trial counsel's performance—counsel's failure to obtain a ruling on his *Sandoval* application (the hearing on which was suspended and then never completed) and counsel's failure to address the DNA evidence from the zip tie identified as trial exhibits 4A-4B (which neither positively matched nor excluded him)—could not have affected the result of the trial, beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d 230, 237 [1975] [stating the standard for finding constitutional error harmless]). This is because the DNA evidence from exhibits 3A-3B, which, as previously noted, matched defendant's DNA profile exactly—a match that defendant has never questioned, either at trial, upon his CPL 440.10 motion, or upon this appeal—provided overwhelming proof of his guilt. Specifically, defendant does not dispute that, as the People's forensic expert testified at trial, DNA that was unquestionably his was found on the zip tie received into evidence as exhibits 3A-3B. To be clear, the People's expert testified, and defendant does not question, that the DNA on exhibits 3A-3B matched defendant's DNA to a degree of certainty *greater than one in one trillion*—as the expert put it, she "would expect to see this [DNA] profile again if we had 153 planet Earths, each populated with 6.5 billion people." In view of this overwhelming evidence, in this particular case, I cannot conclude that counsel's alleged errors would have deprived defendant of meaningful representation.

Defendant suggests no innocent explanation for the undisputed presence of his DNA on exhibits 3A-3B that he could have offered the jury had he exercised his right to testify at trial. Indeed, when he was questioned by the police about this crime after the DNA match was made, defendant claimed that he had never owned or touched orange zip ties and that he had never visited the apartment where the crime was committed. While defendant asserts in support of his CPL 440.10 motion

that "[he] could have explained that statement to the jury and proved to them that [his] statement was not a lie and was not an attempt on [his] part to mislead the police," he does not disclose what this explanation would have been. More fundamentally, defendant offers no theory of how his DNA could have ended up on orange zip ties found at the crime scene other than through his participation in the crime. Accordingly, even if defendant had decided to testify in his own defense, and even if his counsel had done more to attack the expert's testimony concerning the less conclusive DNA evidence obtained from exhibits 4A-4B, "there is no reasonable possibility" (*Crimmins*, 36 NY2d at 237) that the trial would have resulted in a verdict more favorable to defendant, and any error by the trial court or by defendant's trial counsel was therefore "harmless beyond a reasonable doubt" (*id.*).

The majority does not dispute that, as just noted, even a judicial error of constitutional dimension at a criminal trial does not warrant setting aside a conviction in a case where the evidence against the defendant was so overwhelming that there is no reasonable possibility that a more favorable verdict would have resulted in the absence of the error. Nor does the majority seriously take issue with my view that, under this standard, any error by the trial court in failing to render a *Sandoval* ruling was harmless beyond a reasonable doubt, given the undisputed less than one in one trillion chance that the DNA material on exhibits 3A-3B was left by someone other than defendant, and given further defendant's complete failure to suggest a plausible innocent explanation of that evidence that he might have given the jury had he chosen to testify at trial. Instead, the majority focuses on the alleged deficiencies of the performance of defendant's retained trial counsel, noting that the Court of Appeals has stated that it has "refused to apply the harmless error doctrine in cases involving substantiated claims of ineffective assistance" (*People v Benevento*, 91 NY2d 708, 714 [1998]).

The majority correctly states that defendant, to prevail on his ineffective assistance claim, must demonstrate that counsel failed to provide him with meaningful representation (*see e.g. People v Caban*, 5 NY3d 143, 152 [2005]), which does not necessarily require a showing of what the likelihood of a more favorable verdict would have been had the representation been more effective. This, however, does not mean that the strength of the People's case is completely irrelevant to an ineffective assistance claim, as the Court of Appeals observed in the very decisions cited by the majority (*see id.* at 155-156 ["we continue

to regard a defendant's showing of prejudice as a significant but not indispensable element in assessing meaningful representation" (internal quotation marks omitted)]; *Benevento*, 91 NY2d at 714 ["whether defendant would have been acquitted of the charges but for counsel's errors is relevant, but not dispositive under the State constitutional guarantee of effective assistance of counsel"]).

What emerges from the Court of Appeals' rejection of the more outcome-oriented federal standard for claims of ineffective assistance (*see Strickland v Washington*, 466 US 668 [1984]) and its simultaneous acknowledgment that prejudice remains "significant" to such claims under New York law (*Caban*, 5 NY3d at 155 [internal quotation marks omitted]) is that the nature of the People's case against a defendant must be taken into account in determining whether defense counsel's representation was, in fact, meaningful under the state standard. Here, even assuming that defendant did not acquiesce in his trial counsel's apparent decision to drop the *Sandoval* application, it is plain that counsel's decision to take this course—given that defendant even now does not suggest what testimony he could have given that would have actually assisted his defense—did not render counsel's representation less than meaningful.[1] For the majority to hold otherwise is tantamount to stating that a criminal defense lawyer renders ineffective assistance by advising a defendant, contrary to that defendant's inclination, not to exercise the right to testify. This is not the law (*see People v Carpenter*, 52 AD3d 729, 729 [2d Dept 2008] [defendant received effective assistance of counsel where, "after a colloquy among defense counsel, the court, and the defendant, the defendant voluntarily chose to follow the advice of his attorney and not testify"], *lv denied* 11 NY3d 830 [2008]).

It is of course true that counsel properly should have sought defendant's agreement not to exercise his right to take the stand (and, as more fully discussed below, I believe that defendant has essentially admitted having given such agreement). But, even if defense counsel acted unilaterally in this regard, given the overwhelming likelihood that defendant would only have damaged his own defense by testifying, I do not believe that such conduct by counsel (assuming it occurred) would have deprived defendant of meaningful representation or a fair trial. To reach this conclusion is not to "ignore[ ]" defendant's right to decide whether he will testify (however

---

1. Needless to say, if defendant was not going to testify, there was no need for a *Sandoval* ruling.

imprudent his exercise of that right might have been), but simply to acknowledge that, viewing the case as a whole, any error by trial counsel in this regard (and I do not believe that defendant alleges one) did not render counsel's representation—in which he was naturally focused on getting the best verdict possible—meaningless.[2] As to the alleged deficiencies in trial counsel's approach to the inconclusive DNA evidence on exhibits 4A-4B, the People never contended that this material definitively implicated defendant, as the People's forensic expert confirmed under cross-examination, and I do not believe that counsel's approach, while perhaps not beyond criticism in all respects, rendered his representation as a whole less than meaningful.

I further note that the majority grants defendant a hearing on his CPL 440.10 claim based on an exceedingly generous reading of his postjudgment affidavit. In this regard, the majority states that defendant's affidavit "made clear that he informed trial counsel that he wished to testify, depending on the outcome of the *Sandoval* hearing." Defendant said no such thing. In fact, the clear import of his affidavit is that trial counsel prevailed upon him to drop the idea of taking the stand in his own defense—which, as previously noted, would not constitute ineffective assistance of counsel (*see People v Carpenter*, 52 AD3d at 729).[3] While defendant alleges that his attorney said that he would "leave the case" if defendant insisted

---

**2.** I see no reason for the majority's concern with when and how defense counsel informed the trial court that defendant would not testify. Presumably, the majority does not mean to question the trial court's uncontradicted statement on the record that defense counsel indicated to him during trial that defendant would not testify. Even if I agreed with the majority that a hearing is needed to determine whether defendant agreed to take his attorney's advice not to testify, the manner in which counsel conveyed to the court the decision not to have defendant take the stand—whether in writing, in person, by telephone, or simply by resting his case without requesting a *Sandoval* ruling—is legally irrelevant. Any error by the court in failing to render a *Sandoval* ruling is unpreserved and, for the reasons already discussed, was harmless beyond a reasonable doubt. The only conceivable basis on which to grant defendant relief with respect to the *Sandoval* issue is his ineffective assistance claim.

**3.** In pertinent part, defendant's affidavit states: "10. More importantly, counsel failed to obtain a Sandoval ruling, or even make an argument, to limit the prosecutor's cross-examination if I testified. This was critically important because when I told counsel that I wanted to testify, he told me two things: First, he said he would leave the case if I testified, but second, he said that I couldn't testify because the prosecutor would bring up my criminal record in front of the jury. 11. I know that there was a Sandoval application made and that the court started that hearing, but my lawyer never argued that motion and no Sandoval ruling was ever made. I never had the opportunity to decide whether it would be a good idea for me to testify based on

on testifying, I am not aware of any authority holding that a lawyer acts improperly by advising the client that the lawyer will seek leave to withdraw if the client insists upon pursuing a course that the lawyer believes to be self-defeating, illegal or unethical. As to defendant's claim that his counsel told him that "everything about [his] past would come up" if he testified, it is plain that defendant's record of at least four prior felony convictions (more fully described below) would have been used against him to some extent had he taken the stand, however the court might have limited the underlying facts that could be placed before the jury. It is astonishing that the majority suggests that counsel's representation might have been rendered less than meaningful by his giving defendant such commonsense advice. Further, nowhere does defendant's affidavit state that he asked his attorney, at any point during trial, to request that the court complete the *Sandoval* hearing and render a ruling. Indeed, defendant does not even claim to have asked his attorney about the status of the *Sandoval* application when defense counsel, after the resting of the People's case and an off-the-record colloquy, told the court that there would be no defense case.[4]

To the extent the majority might be concerned that defendant failed to ask his attorney about the status of the *Sandoval* application due to confusion or anxiety, it should be borne in mind that defendant apparently was well acquainted with the criminal justice system by the time this case went to trial. The record of the *Sandoval* hearing reflects that defendant's prior criminal record included no less than four prior felony convictions from three different states. These were: (1) a 2008 New York conviction for criminal possession of marijuana in the second degree; (2) a 2007 New Jersey conviction for money

how much of my criminal record the jury would hear because I never got a court decision on my motion. Instead, what my lawyer did was tell me that everything would come up and therefore, I shouldn't testify."

4. Contrary to the majority's implication, in pointing to defendants' failure to allege that he pressed trial counsel to obtain a *Sandoval* ruling, I am not taking the position that it was "defendant's responsibility . . . to remind trial counsel to do his job." I merely point out that, based on defendant's own vague allegations in support of the CPL 440.10 motion, it is much more likely than not that he actually acceded during trial to his attorney's advice not to testify. Further, while I of course agree with the majority that it is not "defendant's responsibility . . . to remind trial counsel to do his job," it seems to me that it was defendant's obligation on his postjudgment motion to tell the court what transpired between trial counsel and himself with respect to the *Sandoval* application, and what they said to each other concerning whether he would exercise his right to testify, if he wished to have his conviction vacated on this ground.

laundering; (3) a 2002 Virginia conviction for cocaine possession; and (4) a 2001 Virginia conviction for two counts of possession of cocaine with intent to distribute. In addition, defendant had a New York youthful offender adjudication for burglary. Moreover, defendant absconded for more than a year after pleading guilty to the marijuana charge and was not sentenced thereon until he was arrested for the burglary and robbery charges that are the subject of the instant appeal.

In sum, the majority orders a hearing on the chance that somehow, or in some way, defendant's retained trial counsel interfered with defendant's right to testify at trial, and to ascertain whether the attorney should have done more to address the People's evidence based on exhibits 4A-4B. The majority thus ignores the utter harmlessness of any deficiencies of counsel's performance in these matters, given the unchallenged exact scientific match between defendant's DNA and the DNA on the zip tie identified as exhibits 3A-3B. To reiterate, quite apart from the damaging statement to the police that defendant asserts he would have somehow explained away had he testified, defendant does not begin to offer even a theory of how his DNA came to be found on a zip tie found at the crime scene other than through his participation in this brutal crime. Further, defendant does not even allege facts that, if true, would establish that his trial counsel interfered with his right to testify; defendant essentially admits that, however reluctantly, he ultimately accepted trial counsel's advice not to exercise his right to take the stand, thereby rendering it unnecessary to complete the *Sandoval* hearing. Accordingly, I respectfully dissent from the majority's remand of the matter for a hearing on the CPL 440.10 motion. On this record, we should affirm the denial of the CPL 440.10 motion and proceed to consider defendant's direct appeal from the judgment of conviction.

