People v Werkheiser (2022 NY Slip Op 05188)

People v Werkheiser

2022 NY Slip Op 05188

Decided on September 15, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 15, 2022

112780
[*1]The People of the State of New York, Respondent,
v
Julie Werkheiser, Appellant.

Calendar Date:August 18, 2022

Before:Garry, P.J., Lynch, Aarons, Ceresia and Fisher, JJ.

Hale & Monico LLC, New York City (Arthur G. Larkin of counsel), for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl Mancini of counsel), for respondent.

Ceresia, J.
Appeal, by permission, from an order of the County Court of Tioga County (Gerald A. Keene, J.), entered March 31, 2021, which denied defendant's motion pursuant to CPL 440.10, to vacate the judgment convicting her of the crime of predatory sexual assault of a child (two counts), without a hearing.
Defendant is the wife of the victims' mother. The victims, two sisters (born in 1998 and 1999), both suffer from phenylketonuria (hereinafter PKU), a genetic metabolic disorder that impacts memory as well as executive and cognitive functioning, and requires adherence to a strict low-protein diet. For the first few years of their lives, the victims lived with their mother and father, who were married at the time. After the mother and father divorced in 2002, the mother maintained custody of the victims for approximately five years, during which time they resided with defendant. Throughout this period, the victims attended a dance school operated by the mother and defendant. In 2007, the mother lost custody of the victims due to medical neglect stemming from her failure to ensure that the victims followed their strictly-regimented diet, and the victims went to live with the father and his wife (hereinafter the stepmother).
In 2011, the older victim (hereinafter victim A) came forward with allegations that the mother had sexually abused her numerous times at their home. The younger victim (hereinafter victim B) made similar allegations. As a result of the victims' claims, charges were brought against the mother, eventually leading to a jury trial. The mother was convicted of one of the two charges against her, but that conviction was overturned on appeal(see People v Stone, 133 AD3d 982 [3d Dept 2015]). Following a second jury trial, the mother was again convicted, but that conviction was also overturned on appeal, and the indictment was dismissed as jurisdictionally defective (see People v Stone, 169 AD3d 1165 [3d Dept 2019]).
Shortly after the mother's first trial, the victims made similar allegations against defendant, asserting that she had repeatedly sexually assaulted them at the dance studio. These allegations led to the filing of charges and defendant was ultimately convicted following a jury trial of two counts of predatory sexual assault of a child. Defendant was thereafter sentenced to concurrent prison terms of 11 years to life. Defendant subsequently moved pursuant to CPL 440.10 to vacate the judgment of conviction, and County Court denied the motion without a hearing. After both the judgment of conviction and the denial of the motion were affirmed on appeal (171 AD3d 1297 [3d Dept 2019], lv denied 33 NY3d 1109 [2019]), defendant filed a second CPL 440.10 motion. County Court denied that motion without a hearing and defendant, by permission, appeals.
Defendant first contends that she is entitled tovacatur of the judgment of conviction, or in the alternative a hearing, based upon newly discovered evidence — specifically, evidence that [*2]victim B recanted her testimony following the trial. To prevail on such a claim, a defendant bears the burden of establishing that the evidence meets "the following requirements: (1) it must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could have not been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and[] (6) it must not be merely impeaching or contradicting the former evidence" (People v Hartle, 192 AD3d 1199, 1202 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv granted 37 NY3d 1027 [2021]; see CPL 440.10 [1] [g]); People v Stetin, 192 AD3d 1331, 1333 [3d Dept 2021]).
In support of her motion, defendant submitted affidavits from six witnesses, each of whom stated that victim B recanted her trial testimony. The mother, who was one of the six affiants, indicated that victim B sent her a friend request on Facebook after nearly eight years of estrangement. The mother accepted the friend request and the two began communicating via text messages, copies of which were attached to her affidavit. Victim B had been living in a homeless shelter at the time, but eventually moved in with the mother for approximately one month. During this period, according to the mother and the other affiants — family friends who knew victim B during her childhood — victim B told them that neither the mother nor defendant had ever sexually assaulted either victim A or victim B, and that their testimony was fabricated. According to some of the affiants, victim B explained that victim A coached her on what to say in court against both the mother and defendant and, after the mother was convicted, victim A sat her down and said, in effect,that they had gotten their mother in trouble and now it was time to get defendant in trouble. Some of the affiants also stated that victim B told them that her father and the stepmother forced her to testify against her mother and defendant and, after the trials, the stepmother told the victims that if they ever changed their stories, they would go to jail.
During the one-month period when victim B had reconciled and was living with the mother, according to multiple affiants, victim B was repeatedly contacted by victim A, the father and the stepmother, all of whom told her that if she continued to associate with the mother, she would be cut off from the family. For this reason and because she feared being accused of lying, victim B balked at the idea of coming forward with her recantation. After victim A threatened victim B with never seeing victim A's daughter again, victim B left the mother's home and cut off all contact with her and the other affiants.
The People, in response, arguethat the affidavits merely constitute impeachment evidence and therefore fail to satisfy the test for newly discovered evidence[*3]. We disagree, noting that "'evidence of recantation upon the part of a witness is not merely evidence which tends to impeach or discredit a witness. Its character is much more fundamental. If the recantation be true it may in certain cases destroy the basis upon which the judgment of conviction rests'" (People v Stetin, 192 AD3d at 1334 [brackets omitted], quoting People v Shilitano, 218 NY 161, 170 [1916]). As for the People's further claim that the recantation evidence is unreliable, while we acknowledge that the reliability of a recantation by a victim or witness is often viewed with skepticism (see e.g. People v Nelson, 171 AD3d 1251, 1255 [3d Dept 2019], lv denied 36 NY3d 1058 [2021]),such evidence may nevertheless form the basis for overturning a conviction when the defendant "rebut[s] the presumption of regularity that attached to the prior judicial proceeding by producing substantial evidence that the recanting witness's prior testimony was false" (id. at 1253). Accordingly, we conclude that the six affidavits, together with the copies of text messages between victim B and some of the affiants,[FN1] were sufficient to warrant the holding of a hearing, such that County Court's denial of defendant's motion on the ground of newly discovered evidence in the absence of such a hearing was error. The People's arguments with respect to the credibility of victim B's recantation, and whether it was coerced, are properly the subject of a hearing.
Similarly, defendant has established her entitlement to a hearing on her claim of actual innocence. "A prima facie showing of actual innocence is made out when there is a sufficient showing of possible merit to warrant a fuller exploration by the court" (People v Hamilton, 115 AD3d 12, 27 [2d Dept 2014] [internal quotation marks and citations omitted]). In support of this claim, defendant has submitted the aforementioned six affidavits as well asa sworn affidavit and attached report from Mark Schachter, a child psychologist and neuropsychologist, who provides analysis of victim B's recantation and opines that it is consistent with other evidence suggesting that she was coerced into fabricating her original allegations against defendant, particularly in view of her low IQ and cognitive deficits associated with her PKU. The foregoing evidence, in our view, justifies a hearing on defendant's actual innocence claim(see People v Stetin, 192 AD3d at 1335; People v Hamilton, 115 AD3d at 27).
We further find that a hearing should be held with respect to certain aspects of defendant's claim of ineffective assistance of counsel. "In determining whether a defendant has been deprived of effective assistance, a court must examine whether the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Oliveras, 21 NY3d 339, 346 [2013] [internal quotation marks and citation omitted]; [*4]see People v Stover, 178 AD3d 1138, 1147 [3d Dept 2019], lv denied 34 NY3d 1163 [2020]). "To establish ineffective assistance, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Mosley, 121 AD3d 1169, 1173 [3d Dept 2014] [internal quotation marks, brackets and citations omitted], lv denied 24 NY3d 1086 [2014]). "A hearing is required on a CPL article 440 motion if the submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief" if credited (People v Buckley, 206 AD3d 1470, 1471 [3d Dept 2022] [internal quotation marks and citations omitted]).
Defendant, citing to Schachter's affidavit and report, asserts that trial counsel should have consulted with and called an expert to: (1) refute the People's expert testimony that the delay in the victims' reports of abuse was the result of child sexual abuse accommodation syndrome (CSAAS), and advise the jury that there was no scientific consensus supporting CSAAS; (2) explain that, due to their PKU, the victims were highly susceptible to false memories and that their statements displayed inconsistencies suggesting they were false; and (3) provide opinion testimony that the victims were subjected to parental alienation, as they were coached by the father and the stepmother to lie about being abused by the mother and defendant.
In opposition, the People argue generally that defendant was afforded effective representation, as counsel presented a cogent defense, conducted rigorous cross-examination of the People's witnesses, and challenged the victims' credibility in closing arguments. The People also contend that an expert witness was not necessary to the defense because defense counsel thoroughly cross-examined the People's experts. In addition, the People note that, according to an affidavit from trial counsel submitted as part of defendant's motion, counsel did consult with an expert regarding CSAAS. The People further point to the statement in trial counsel's affidavit that he chose not to pursue the defense of parental alienation, in part because he was concerned that such a defense would open the door to evidence about the mother's sexual abuse conviction.
Although we are mindful that trial counsel's cross-examination of the People's experts touched on some of the issues raised by Schachter, and that counsel offered an explanation for choosing to pursue a different defense than the one for which Schachter now advocates,a defendant may establish that he or she was denied meaningful representation in connection with the failure to call an expert witness by "demonstrat[ing] that such testimony was available, that it would have assisted the jury in its determination or that he [or she] was prejudiced by its absence" (People v Washington, 122 AD3d 1406, 1407 [4th Dept 2014] [internal quotation marks and citation omitted], lv denied 25 NY3d 1173 [2015]; [*5]accord People v Sposito, 193 AD3d 1236, 1244 [3d Dept 2021, Colangelo, J., dissenting], affd 37 NY3d 1149 [2022]). We find that defendant has made a sufficient showing to warrant a hearing on the issue of whether trial counsel was ineffective for failing to call an expert witness to testify on the issues outlined by Schachter (see People v Caldavado, 26 NY3d 1034, 1036-1037 [2015]; People v Buckley, 206 AD3d at 1471-1472; People v Mercado, 147 AD3d 613, 616 [1st Dept 2017]; People v Dombrowski, 87 AD3d 1267, 1268 [4th Dept 2011]).
Defendant also claims that trial counsel was ineffective for failing to object to victim A's testimony relative to her alleged recovered memories. In counsel's affidavit, he conceded that he was unaware of this Court's previous holding "that this type of testimony should not be admissible unless it is independently corroborated" (People v Murphy, 235 AD2d 933, 934 [3d Dept 1997], lv denied 90 NY2d 896 [1997]). The People counter that People v Murphy is not controlling, inasmuch as victim A's testimony did not constitute a recovered memory. Under these circumstances, exploration of this issue at a hearing is appropriate. As for defendant's other arguments concerning ineffective assistance, they were properly denied without a hearing.
Defendant's remaining claims, including her arguments regarding alleged due process violations and juror misconduct, have been considered and found to be without merit.
Garry, P.J., Lynch, Aarons and Fisher, JJ., concur.
ORDERED that the order is reversed, on the law, and matter remitted to the County Court of Tioga County for a hearing pursuant to CPL 440.30 (5).

Footnotes

Footnote 1: The People's own affirmation in opposition to defendant's CPL 440.10 motion provides further recantation evidence. That is, the assistant district attorney states in her attorney affirmation that the motion prompted her to recall a conversation that she had with the stepmother around the time of defendant's sentencing, wherein the stepmother told the assistant district attorney that victim B "had said it didn't happen."