■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK WILLIAMS, Appellant. [815 NYS2d 330]—

Carpinello, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered July 29, 2004, upon a verdict convicting defendant of the crime of murder in the second degree.

On the afternoon of March 21, 2003, Lynn Fitzsimmons (hereinafter the victim) was found shot in her car a short distance

from her Katrine Lane home in the Town of Ulster, Ulster County. She had been shot once in the left temple and succumbed to her injury later that night. Defendant, her ex-boyfriend, was charged with this killing and found guilty by a jury of murder in the second degree. Sentenced to 25 years to life in prison, he appeals. We now affirm.

We are unpersuaded by defendant's claim that the verdict was not supported by the weight of the evidence. At trial, it was established that less than two hours before the murder, defendant showed up unexpectedly[1] at the victim's place of employment, unkempt and "glassy eyed." The victim was visibly shaken and frightened by his presence in her office and his reemergence into town. Defendant was asked to leave by the victim's supervisor, and he did so. Despite coworkers' advice to the contrary, the victim left work and went home on her lunch hour. While there, defendant pulled into her driveway, waited and ultimately pulled away. Despite her mother's concerns for her safety, the victim left to return to work. Within 10 minutes of her departure, she was shot one time in the head inside her vehicle at an intersection a short distance from home.

In the meantime, numerous workers at a local warehouse near the victim's home observed a white van parked short of an intersection with Katrine Lane. The driver of that van, unequivocally identified at trial by three of these coworkers as defendant, was looking down Katrine Lane as he slouched in his van. Two of these witnesses specifically established that defendant was the sole occupant of the van. Two other employees testified that, while eating their lunch outside, they heard a "loud clap" in the vicinity of this intersection and seconds later observed the white van drive away. The victim was found slumped over in her idling vehicle shortly thereafter.

Approximately one hour after the victim was discovered, the white van was located in a nearby park along the Hudson River. A soaking wet defendant was then seen emerging from some woods carrying a fishing pole. Upon being questioned by police, he orally admitted that he visited the victim at her place of employment that afternoon in an effort to get back together with her and that he also parked his white van in her driveway during her lunch hour. He denied killing her, initially claiming that when he left her house, he drove around and then went fishing. Upon being informed that numerous witnesses had placed him and his van in close proximity to the scene, he finally admitted that he was there and that he had words with the

---

1. The victim had not seen defendant since their breakup several months earlier, at which time he left the Ulster County area.

victim. He continued to deny that he killed her, claiming instead that his unnamed terrorist companion from Florida shot her.

The People further presented evidence that a torn shirt sleeve, later confirmed to belong to defendant, and a handkerchief were found tied around a brick in the Hudson River. Moreover, particles of gunshot residue were detected on his hand and shirt. While no weapon was ever found or blood detected on defendant or his clothing, we are nevertheless satisfied, viewing the evidence in a neutral light but according due deference to the jury which heard and observed the witnesses, that the verdict was not against the weight of the evidence (*see* CPL 470.15 [5]; *People v Bleakley*, 69 NY2d 490, 495 [1987]).[2]

Next, contrary to defendant's contention, County Court did not abuse its discretion in permitting evidence of defendant's prior abusive, controlling and threatening behavior toward the victim as it provided necessary background information as to their relationship and also bears on motive and intent (*see People v James*, 19 AD3d 616 [2005], *lv denied* 5 NY3d 807 [2005]; *People v Vega*, 3 AD3d 239 [2004], *lv denied* 2 NY3d 766 [2004]; *People v Ramsey*, 1 AD3d 538 [2003], *lv denied* 1 NY3d 600 [2004]; *see also People v Gorham*, 17 AD3d 858 [2005]; *People v De Fayette*, 16 AD3d 708 [2005], *lv denied* 4 NY3d 885 [2005]; *People v Jones*, 9 AD3d 374 [2004], *lv denied* 3 NY3d 708 [2004]; *People v Poquee*, 9 AD3d 781 [2004], *lv denied* 3 NY3d 741 [2004]; *People v Howard*, 285 AD2d 560 [2001], *lv denied* 96 NY2d 940 [2001]; *People v Lotmore*, 276 AD2d 901 [2000], *lv denied* 96 NY2d 736 [2001]). Additionally, the probative value of this evidence far outweighs any unfair prejudice (*see People v Ventimiglia*, 52 NY2d 350, 359 [1981]; *see also People v James, supra; People v Vega, supra; People v Ramsey, supra*).

Defendant's remaining contentions, including the claim that his sentence was harsh and excessive and those contained in his pro se brief, have been reviewed and rejected.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed.

**2.** With respect to the absence of blood evidence connecting defendant to this murder, we note that testimony was provided establishing that water would dilute any blood and, more importantly, that the victim's wound was such that there would have been no splattering of blood back towards her shooter.