■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHAWN M. DOYLE, Appellant. [852 NYS2d 433]—

Carpinello, J. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered March 3, 2006, upon a verdict convicting defendant of the crime of murder in the second degree.

On July 24, 2005, a large truck chest was discovered floating in the Champlain Canal near Lock 9 in Washington County. The chest was locked and a mordant odor was emanating from it. It was thereafter revealed that the chest, which had been weighed down with sand tubes, contained the body of defendant's former girlfriend, who had been missing from the Madison County area for over 10 weeks. The victim's mouth had been gagged with a bandana and duct taped shut while her hands and feet had been bound with handcuffs and duct tape. Her body had been wrapped in a comforter from her bed. An autopsy revealed that she died from asphyxia due to suffocation.

This gruesome discovery was made a short distance from defendant's Washington County home. Indeed, he was the last person to have seen the victim alive on May 4, 2005 after traveling to Central New York to help her move. Following a jury trial, defendant was found guilty of murder in the second degree and sentenced to 25 years to life in prison. He now appeals.

Defendant argues that the evidence was legally insufficient to support his conviction and also that the verdict was against the weight of the evidence. The first contention has not been properly preserved for review by a specific motion to dismiss at the close of the People's proof (*see People v Gray*, 86 NY2d 10, 19 [1995]). In any event, reversal in the interest of justice is not warranted. Moreover, upon the exercise of our factual review power (*see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Bleakley*, 69 NY2d 490, 495 [1987]), we are satisfied that the verdict was not against the weight of the evidence.

It was established at trial that the relationship between defendant and the victim had been a rocky one filled with incidents of jealous and controlling behavior on defendant's part. Although they had broken up several weeks earlier, defendant agreed to travel to Central New York on April 29, 2005 to help her move. On his last night in town, defendant was observed sitting alone in the bar where the victim was working as a bartender. At closing time (i.e., in the early morning hours of May 4, 2005), the victim, in the presence of defendant, left the bar with a male patron with whom she had been recently dating. She dropped this man off at his home and he never saw or heard from her again. It is undisputed that defendant was with the victim for several hours later that same day before she was scheduled to go out of town to meet another man who had agreed to give her baseball tickets. She never showed up for that meeting.

In addition to being the last person to see the victim alive, defendant purchased the truck chest in which her body was found at an auto parts store near his home less than one week before her disappearance.[1] Moreover, following her disappearance, the specific key to the lock on this chest was discovered inside the glove compartment of defendant's truck. Additionally, sand tubes matching those weighing down the chest and handcuffs matching those used on the victim were discovered in defendant's home. A bandana with a similar pattern as that used to gag the victim was also found in his home.

By all accounts, defendant always wore a bandana on his

---

1. In particular, the auto parts sales manager who sold the truck chest recalled the sale and identified defendant as the person who had purchased it.

head.[2] The one time he was seen without this accessory was on the night he arrived back in Washington County following his trip to help the victim move. According to the testimony of one of defendant's friends, defendant called her on route back to Washington County and thereafter stopped by her house. During their phone conversation, defendant informed her that the victim would not "be bothering [him] anymore." During their face-to-face encounter, the friend noticed a cardboard box in the bed of defendant's truck and further observed that he was not wearing a bandana, which was highly unusual.

This same friend testified that a few days after defendant returned to town, she observed the subject truck chest in his truck. According to the friend, when she inquired about his need for it, defendant told her that he was using it for storage. He also told her that he was going fishing at the "lock" that day and that his fishing pole was inside the chest. According to the friend, defendant did not fish. There was additional testimony that, following the victim's disappearance, defendant paid a coworker to dispose of a bag which was found to contain identifiable personal items of the victim.

In seeking to set aside the verdict as against the weight of the evidence, defendant specifically attacks the credibility of two key prosecution witnesses, namely, the auto parts store manager who recalled selling him the truck chest (claiming her identification of him was tainted by news coverage of his arrest and a flawed photo array) and his friend who recalled seeing that same chest in his truck (claiming that others had not made the same observation and that this was her second appearance as a key witness in a murder case). These challenges to each witness's credibility were explored during cross-examination. Although a contrary verdict might not have been unreasonable had the jury rejected the testimony of both of these witnesses, it was the jury's province to resolve all credibility issues and this Court accords due deference to such determinations (*see e.g. People v Gathers*, 47 AD3d 959, 960 [2008]). Weighing the evidence in a neutral light (*see People v Bleakley, supra*), we conclude that the verdict was not against the weight of the evidence (*see* CPL 470.15 [5]; *People v Williams*, 29 AD3d 1217, 1218-1219 [2006], *lv denied* 7 NY3d 797 [2006]).

Next, we find no error in County Court's *Molineux* ruling whereby it permitted the People to introduce evidence concerning specific instances of defendant's threatening and controlling behavior toward the victim (*compare People v Westerling*, 48

---

**2.** Notably, defendant so frequently wore a bandanna that most witnesses who knew him did not recognize him at trial without one.

AD3d 965 [2008] [decided herewith]), as well as his threatening and assaultive behavior toward two former girlfriends which resulted in convictions for unlawful imprisonment and menacing. Evidence regarding defendant's prior abusive and threatening behavior toward the victim herself, while prejudicial, was legally relevant and material to issues aside from defendant's propensity to commit murder, namely, motive, intent, identity and relevant background information, and its probative value in this circumstantial evidence case outweighed its potential for prejudice (*see People v Betters*, 41 AD3d 1040, 1042 [2007]; *People v Miles*, 36 AD3d 1021, 1022-1023 [2007], *lv denied* 8 NY3d 988 [2007]; *People v Wlasiuk*, 32 AD3d 674, 676-677 [2006], *lv denied* 7 NY3d 871 [2006]; *People v Williams*, 29 AD3d at 1219; *People v Poquee*, 9 AD3d 781, 782 [2004], *lv denied* 3 NY3d 741 [2004]; *see also People v Vega*, 3 AD3d 239, 247-249 [2004], *lv denied* 2 NY3d 766 [2004]; *People v Bierenbaum*, 301 AD2d 119, 150 [2002], *lv denied* 99 NY2d 626 [2003], *cert denied* 540 US 821 [2003]).[3] Additionally, County Court gave proper and appropriate limiting instructions to the jury concerning the permissible uses of this evidence thus limiting its prejudicial effect (*see People v Betters, supra*; *People v Miles, supra*; *People v Poquee, supra*; *cf. People v Westerling, supra*).

Likewise, we find no abuse of discretion in permitting evidence concerning incidents involving defendant's former girlfriends, namely, that in 1996 he pushed down and choked his girlfriend (resulting in the menacing conviction) and that in 2000 he duct taped the mouth of another girlfriend, and choked and strangled her (resulting in the unlawful imprisonment conviction). On each of these prior occasions, intervention of third parties diffused the attacks. These prior incidents, which do reveal a sufficiently distinctive crime pattern, were properly admitted to establish defendant's motive and identity as the victim's murderer (*see People v Toland*, 284 AD2d 798 [2001], *lv denied* 96 NY2d 942 [2001]; *see also People v Latimer*, 24 AD3d 807, 808-809 [2005], *lv denied* 6 NY3d 849 [2006]). Moreover, the probative value of these prior incidents in this circumstantial case outweighed the potential for prejudice (*see People v Toland, supra*), and County Court gave appropriate limiting instructions.

Finally, we are unpersuaded that the auto parts store manager's identification of defendant was the result of an un-

---

**3.** Contrary to defendant's contention, we find that County Court did engage in a substantive balancing test of the probative value of all evidence against its potential to unduly prejudice him (*compare People v Wlasiuk*, 32 AD3d at 678).

duly suggestive procedure and that a search warrant executed on his home was defective.

Cardona, P.J., Spain, Kane and Malone Jr., JJ., concur. Ordered that the judgment is affirmed.