THIRD DEPARTMENT, APRIL, 2017

(April 6, 2017)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR H. MORGAN, JR., Appellant. [51 NYS3d 218]—

Clark, J. Appeals (1) from a judgment of the County Court of Columbia County (Nichols, J.), rendered February 20, 2009, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered April 17, 2015, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

On April 9, 2008, after defendant's wife had been reported missing, her body was found wrapped in a blanket underneath the trailer home that she had once shared with defendant. Defendant was later charged with murder in the second degree and, following a jury trial, he was convicted as charged. Prior to sentencing, defendant moved pursuant to CPL article 330 to set aside and vacate the verdict, arguing, among other things, that he had been denied the right to testify on his own behalf. County Court denied the motion and thereafter sentenced defendant to a prison term of 25 years to life and imposed a fine of $15,000, as well as fees and surcharges. County Court denied defendant's subsequent CPL 440.10 motion to vacate the judgment of conviction without a hearing. Defendant now appeals from the judgment of conviction and, by permission, from the summary denial of his CPL 440.10 motion.

We turn first to defendant's challenge to the admissibility of testimonial evidence that he perpetrated prior acts of domestic violence against the victim. "Evidence of . . . prior uncharged crime[s or prior bad acts] may not be admitted solely to demonstrate a defendant's bad character or criminal propensity, but may be admissible if linked to a specific material issue or fact relating to the crime[s] charged, and if [their] probative value

outweighs [their] prejudicial impact" (*People v Blair*, 90 NY2d 1003, 1004-1005 [1997] [citations omitted]; *accord People v Kidd*, 112 AD3d '994, 995 [2013], *lv denied* 23 NY3d 1039 [2014]; *People v Westerling*, 48 AD3d 965, 966 [2008]). Here, as County Court properly concluded, evidence of defendant's prior threats and abusive behavior toward the victim were legally relevant and material to the issues of motive, intent and the absence of mistake (*see People v Burkett*, 101 AD3d 1468, 1470 [2012], *lv denied* 20 NY3d 1096 [2013]; *People v Kelly*, 71 AD3d 1520, 1521 [2010], *lv denied* 15 NY3d 775 [2010]; *People v Doyle*, 48 AD3d 961, 964 [2008], *lv denied* 10 NY3d 862 [2008]; *People v Williams*, 29 AD3d 1217, 1219 [2006], *lv denied* 7 NY3d 797 [2006]).[1] As to the probative value of the evidence versus its prejudicial impact, County Court engaged in a proper balancing of these competing interests (*see People v Miles*, 36 AD3d 1021, 1023 [2007], *lv denied* 8 NY3d 988 [2007]; *compare People v Wlasiuk*, 32 AD3d 674, 678 [2006], *lv dismissed* 7 NY3d 871 [2006]). Considering the circumstantial nature of the case and the temporal proximity between the victim's death and the subject incidents, which bore on the nature of the marital relationship of defendant and the victim, we conclude that County Court did not abuse its discretion in ruling that such evidence was more probative than prejudicial and, therefore, admissible for the limited purpose of establishing defendant's motive or intent (*see People v Kelly*, 71 AD3d at 1521; *People v Doyle*, 48 AD3d at 964; *People v Williams*, 29 AD3d at 1219). Moreover, after the relevant testimony and in its final charge, County Court issued appropriate limiting instructions concerning the purpose for which the jury could consider the subject testimony, thereby limiting the prejudicial effect of such evidence (*see People v Burkett*, 101 AD3d at 1471; *People v Doyle*, 48 AD3d at 964).

Next, because defendant made only a general motion to dismiss at the conclusion of the People's case, defendant's challenge to the legal sufficiency of the evidence supporting the verdict is unpreserved (*see People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Valverde*, 122 AD3d 1074, 1075 [2014], *lv denied* 27 NY3d 970 [2016]). Nevertheless, as part of our review of defendant's additional claim that the verdict is against the weight of the evidence, we must assess whether the elements of murder in the second degree, which requires proof "that defendant caused the victim's death after having acted with the

---

1. County Court precluded, as not probative to the crime charged, evidence of other alleged prior acts of domestic violence perpetrated by defendant against someone other than the victim.

intent to do so" (*People v Wlasiuk*, 136 AD3d 1101, 1102 [2016], *lv denied* 27 NY3d 1009 [2016]; *see* Penal Law § 125.25 [1]), were proven beyond a reasonable doubt (*see People v Danielson*, 9 NY3d 342, 349 [2007]; *People v McCann*, 126 AD3d 1031, 1032 [2015], *lv denied* 25 NY3d 1167 [2015]). If we conclude that it would not have been unreasonable for the jury to have acquitted defendant of the charged crime, we then proceed to weigh the relative probative force of any conflicting testimony and the relative strength of any conflicting inferences that may be rationally drawn from the testimony, so as to determine whether the jury accorded appropriate weight to the evidence and, thus, was justified in finding defendant guilty beyond a reasonable doubt (*see People v Danielson*, 9 NY3d at 348; *People v Smith*, 138 AD3d 1248, 1250 [2016], *lv denied* 27 NY3d 1139 [2016]).

At trial, the People sought to prove the theory that defendant killed the victim during an episode of domestic violence. As to the element of intent, which may be properly inferred from a defendant's conduct and the surrounding circumstances (*see People v Taylor*, 134 AD3d 1165, 1166 [2015], *lv denied* 26 NY3d 1150 [2016]; *People v Chancey*, 127 AD3d 1409, 1411 [2015], *lv denied* 25 NY3d 1199 [2015]), the People called several witnesses who testified to previously observing defendant perpetrate acts of domestic violence against the victim, including striking her, holding her by the throat and threatening to kill her. In addition, an acquaintance of the victim testified that, toward the end of March 2008, she had a telephone conversation with defendant wherein she informed defendant that the victim had been cheating on him. The acquaintance stated that, in reaction to the victim yelling in the background, defendant told her that he would call her back after he had "take[n] care" of the victim. This testimony was corroborated by defendant's statements to law enforcement that he had argued with the victim before her disappearance, as well as the testimony of defendant's brother, who asserted that defendant had told him about the conversation with the acquaintance and that the ensuing argument with the victim had "got[ten] out of hand."

As to the issue of whether defendant caused the victim's death, notwithstanding that the People's expert pathologist testified that he could not identify the cause of death,[2] the victim's body was discovered wrapped in a blanket and hidden

---

**2.** Defendant did not object to the People's pathologist being qualified as an expert or to the pathologist's opinion testimony that the victim's death was a homicide and, thus, his contentions with respect thereto are

underneath the trailer home that she shared with defendant. The scientific evidence established that the victim's body had been wrapped in the blanket before she was moved from within the trailer to underneath the trailer and that defendant's DNA was on that blanket. Defendant's mother testified that, on March 30, 2008, she went to defendant's home and observed the victim lying "face up" in bed, partially covered with the blanket in which she was later discovered. In addition, defendant's DNA was found under the victim's fingernails, and the police investigator who interviewed defendant about the victim's disappearance testified that he had observed scratches on defendant's face. Defendant's DNA was also found on blood stain cuttings from a curtain in the master bedroom and the victim's shirt.

Further, defendant's brother testified that defendant had confessed to killing the victim during an argument and stated that he had "no other choice" but to hide her body underneath the trailer. That testimony was partially corroborated by the testimony of defendant's friend, who stated that defendant had asked if the police would look for him if the victim did not appear in Family Court and her body was not found. Moreover, defendant gave conflicting statements to law enforcement, his mother and his brother as to where he went and what he did after arguing with the victim. Finally, the victim's driver's license, Social Security card and health insurance card—the very documents that defendant had told an investigating police officer that the victim had taken with her when she left the trailer following their argument—were retrieved from defendant's wallet. In our view, it would not have been unreasonable for the jury to have acquitted defendant based on the foregoing evidence, as the jury could have discredited the testimony of the People's key witnesses, including defendant's brother, and accepted the defense's theory that someone else had killed the victim. However, viewing the evidence in a neutral light and extending appropriate deference to the jury's assessment of witness credibility (see People v Romero, 7 NY3d 633, 644 [2006]; People v Morris, 140 AD3d 1472, 1475 [2016], lv denied 28 NY3d 1074 [2016]), we find that the weight of the evidence amply supports the jury's guilty verdict (see People v Wlasiuk, 136 AD3d at 1102-1103; People v Thibeault, 73 AD3d 1237, 1239-1240 [2010], lv denied 15 NY3d 810 [2010], cert denied 562 US 1293 [2011]; People v Denis, 276 AD2d 237, 240-244 [2000], lv denied 96 NY2d 782 [2001]).

unpreserved (see People v Campanella, 100 AD3d 1420, 1421 [2012], lv denied 20 NY3d 1060 [2013]; People v Odell, 26 AD3d 527, 529 [2006], lv denied 7 NY3d 760 [2006]; People v Gonzalez, 226 AD2d 214, 214 [1996]).

We do, however, find merit to defendant's claim, made in his appellate brief and in his CPL article 440 motion, that he was denied his due process right to testify in his own criminal defense. It is a fundamental principle of due process that a criminal defendant has a right, guaranteed by the US and NY Constitutions, to take the stand and testify on his or her own behalf (*see Rock v Arkansas*, 483 US 44, 51-53 [1987]; *Bennett v United States*, 663 F3d 71, 84 [2d Cir 2011]; *People v Robles*, 115 AD3d 30, 33-34 [2014], *lv denied* 22 NY3d 1202 [2014]; *People v Harden*, 99 AD3d 1031, 1032 [2012], *lv denied* 20 NY3d 986 [2012]). The constitutional right to testify in one's own defense is " 'personal' " to the defendant (*People v Robles*, 115 AD3d at 34, quoting *Chang v United States*, 250 F3d 79, 82 [2d Cir 2001]) and, while the decision to testify or not to testify is often made in consultation with counsel (*see e.g. People v Borthwick*, 51 AD3d 1211, 1216 [2008], *lv denied* 11 NY3d 734 [2008]; *People v Johnson*, 273 AD2d 495, 497 [2000], *lv denied* 95 NY2d 854 [2000]), the defendant retains ultimate decision-making authority as to whether to waive this right (*see Jones v Barnes*, 463 US 745, 751 [1983]; *People v Hogan*, 26 NY3d 779, 786 [2016]; *People v Petrovich*, 87 NY2d 961, 963 [1996]). Any such waiver must be knowing, voluntary and intelligent (*see People v Gajadhar*, 9 NY3d 438, 448 [2007]; *Brown v Artuz*, 124 F3d 73, 78-79 [2d Cir 1997], *cert denied* 522 US 1128 [1998]; *United States v Pennycooke*, 65 F3d 9, 11 [3d Cir 1995]). Generally, the trial court does not have an affirmative obligation to ascertain whether the defendant's failure to testify was the result of a knowing, voluntary and intelligent waiver of his or her right to testify (*see People v Pilato*, 145 AD3d 1593, 1595 [2016]; *People v Marcelle*, 120 AD3d 833, 834 [2014], *lv denied* 24 NY3d 1045 [2014]; *People v Dolan*, 2 AD3d 745, 746 [2003], *lv denied* 2 NY3d 798 [2004]; *see generally People v Fratta*, 83 NY2d 771, 772 [1994]). "However, 'in exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected' " (*People v Robles*, 115 AD3d at 34, quoting *United States v Pennycooke*, 65 F3d at 12; *see United States v Hung Thien Ly*, 646 F3d 1307, 1317 [11th Cir 2011]; *United States v Leggett*, 162 F3d 237, 247 [3d Cir 1998], *cert denied* 528 US 868 [1999]; *United States v Ortiz*, 82 F3d 1066, 1071 [DC Cir 1996]; *Ortega v O'Leary*, 843 F2d 258, 261 [7th Cir 1988], *cert denied* 488 US 841 [1988]; *People v Dolan*, 2 AD3d at 746).

In our view, such judicial interjection should have occurred here. At trial, during a charge conference following the conclusion of evidence, but before summation, it became clear that

defendant and his counsel disagreed as to certain aspects of his defense, including whether defendant should have taken the stand on his own behalf.[3] Defendant advised County Court that defense counsel did not want him to take the stand and testify, but that he thought it was "best that [he] do do that." Defendant further stated, "I feel like I . . . have no reason not to want to do that. Because I am innocent, your Honor." In response, County Court stated that the "determination ha[d] been made" and that the "[d]efense ha[d] rested." Thereafter, defendant asked if it was his right to take the stand, at which point County Court twice more repeated that the determination had been made and the defense had rested. The following colloquy then took place:

"[THE DEFENDANT]: I never said that I didn't want to take the stand though, your Honor.

"THE COURT: I don't know what you did or didn't say to your attorney and that is not my business, that is confidential.

"[THE DEFENDANT]: I have never told you that I didn't want to take the stand.

"THE COURT: And you're not—you don't need to tell me that. That's something private between your attorney and the [d]efense has rested. Unless there's going to be a request here to reopen the defense, which I'll consider, you tell me, Mr. Michaels, is that a request your (sic) making?

"[DEFENSE COUNSEL]: No, it's not, your Honor."

Contrary to the People's contention, defendant's statements constituted a clear request to testify, despite having perhaps been advised against it by counsel. Defendant's request to testify, coupled with his statements that he and defense counsel had disagreed on the issue, gave rise to one of those rare circumstances in which County Court was required to engage in a direct colloquy with defendant so as to discern whether he had been advised that the decision to testify ultimately belonged to him and whether, at the time that the defense rested, defendant's failure to testify had been a knowing, voluntary and intelligent waiver of that right (see People v Robles, 115 AD3d at 34-37; compare People v Perry, 266 AD2d 151, 152 [1999], lv denied 95 NY2d 856 [2000]). However, County Court failed to engage in the required inquiry so as to ensure that defendant's

---

**3.** The record reflects that defendant and defense counsel also disagreed as to whether to submit to the jury the lesser included offense of manslaughter in the first degree, a matter over which defense counsel has final authority (see People v Hogan, 26 NY3d at 786; People v Colville, 20 NY3d 20, 31-32 [2012]).

constitutional right to testify was protected. While County Court asked whether there was an application to reopen the proof and indicated that it would consider such a request, it directed that question only to defense counsel, even in the face of defendant's repeated statements that he and defense counsel had differing opinions on the matter. By directing its question solely to defense counsel, County Court demonstrated an apparent misapprehension of longstanding precedent holding that a represented defendant has final decision-making authority over the decision to testify (see Jones v Barnes, 463 US at 751; People v Hogan, 26 NY3d at 786; People v Petrovich, 87 NY2d at 963). Inasmuch as County Court's error was one of constitutional dimension, and because we cannot conclude that such error was harmless beyond a reasonable doubt, the judgment of conviction must be reversed and a new trial held (see People v Harden, 99 AD3d at 1034; People v Terry, 309 AD2d 973, 975 [2003]; People v Mason, 263 AD2d 73, 77 [2000]; People v Burke, 176 AD2d 1000, 1001 [1991]).

In view of the fact that a new trial is required, we find it necessary to only briefly address a few of defendant's remaining arguments. As to defendant's claim of ineffective assistance of counsel, our review of the record demonstrates that defense counsel mounted a calculated defense through opening and closing statements and cross-examination, all of which were aimed at cultivating reasonable doubt by suggesting that someone other than defendant had killed the victim. Given this overarching strategy, we cannot say that defense counsel's decision not to call an expert on domestic violence or a competing expert pathologist amounted to ineffective assistance of counsel (see People v Drennan, 81 AD3d 1279, 1280 [2011], lv denied 16 NY3d 858 [2011]; People v Palmer, 247 AD2d 758, 760 [1998], lv denied 92 NY2d 903 [1998]). Further, notwithstanding defense counsel's failure to move to reopen the proof after defendant made on-the-record statements invoking his right to testify, the nature and extent of conversations that previously took place between defendant and defense counsel regarding defendant's right to testify are matters that are outside the record and, given the need for a retrial, we need not reach this portion of defendant's CPL article 440 motion.

Finally, we find no merit to defendant's argument that the trial judge should have recused himself because he had presided over prior Family Court proceedings involving allegations that defendant had committed acts of domestic violence against the victim. Inasmuch as none of the statutory grounds requiring recusal were implicated (see Judiciary Law § 14), the

trial judge was "the sole arbiter of recusal" (*People v Moreno*, 70 NY2d 403, 405 [1987]; *see People v Kenyon*, 108 AD3d 933, 941 [2013], *lv denied* 21 NY3d 1075 [2013]), and, with no evidence to support the conclusion that the trial judge was unable to impartially preside over the matter, we find no abuse of discretion in the trial judge declining to recuse himself (*see People v Kenyon*, 108 AD3d at 941; *People v Shultis*, 61 AD3d 1116, 1117 [2009], *lv denied* 12 NY3d 929 [2009]; *People v Bibbs*, 177 AD2d 1056, 1056-1057 [1991], *lv denied* 79 NY2d 918 [1992]).

We have examined defendant's remaining contentions and they are either lacking in merit or rendered academic by our determination.

Garry, J.P., Lynch, Mulvey and Aarons, JJ., concur. Ordered that the judgment and order are reversed, on the law, motion to vacate granted, and matter remitted to the County Court of Columbia County for a new trial.