(July 20, 2017)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD BABCOCK, Appellant. [59 NYS3d 527]—

Peters, P.J. Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered December 20, 2013, upon a verdict convicting defendant of the crime of manslaughter in the first degree.

At approximately 8:40 a.m. on March 6, 2013, defendant called 911 to report that the victim, his fiancée, had fallen down the front stairs of her residence and injured herself. The victim was thereafter transported to the hospital where she underwent surgery and died the following day. Defendant was arrested and subsequently charged by indictment with manslaughter in the first degree. County Court ordered an examination pursuant to CPL article 730 to determine defendant's competence to stand trial and, following a hearing, found de-

---

fendant fit to proceed to trial. A jury trial ensued, at the conclusion of which defendant was convicted as charged. Sentenced to the maximum prison term of 25 years followed by five years of postrelease supervision, defendant appeals.

We reject defendant's contention that County Court erred in finding him competent to proceed to trial. "The key inquiry in determining whether a criminal defendant is fit for trial is whether he or she has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding—and whether he or she has a rational as well as factual understanding of the proceedings against him or her" (*People v Phillips*, 16 NY3d 510, 516 [2011] [internal quotation marks, brackets and citation omitted]; *accord People v Hadfield*, 119 AD3d 1217, 1218-1219 [2014], *lv denied* 25 NY3d 989 [2015]; *People v Kendall*, 91 AD3d 1191, 1192 [2012]; *see* CPL 730.10 [1]). "In making this determination, a court may take into account the findings of any competency examination as well as its own observations of the defendant" (*People v Kendall*, 91 AD3d at 1192 [internal quotation marks, brackets and citations omitted]; *see People v Phillips*, 16 NY3d at 517; *People v Mendez*, 1 NY3d 15, 20 [2003]). Notably, "trial fitness is a legal, judicial determination, and not a medical one" (*People v Phillips*, 16 NY3d at 517; *see People v Campbell*, 279 AD2d 797, 798 [2001], *lv denied* 96 NY2d 826 [2001]), and we accord considerable deference to a trial court's determination in this regard, particularly where, as here, it was presented with conflicting testimony as to the defendant's competence (*see People v Surdis*, 77 AD3d 1018, 1018-1019 [2010], *lv denied* 16 NY3d 800 [2011]; *People v Johnson*, 52 AD3d 1040, 1042 [2008], *lv denied* 11 NY3d 833 [2008]; *People v Campbell*, 279 AD2d at 798).

Defendant was examined by three psychiatrists. Two psychiatrists, who testified on behalf of defendant, concluded that defendant was incompetent to stand trial, whereas the psychiatrist retained by the People found defendant competent to stand trial and concluded that defendant had feigned psychiatric symptoms to meet his personal needs. The People's psychiatrist, who had extensive experience in conducting CPL article 730 examinations, interviewed defendant for approximately one hour, reviewed relevant documents and reached his conclusion based upon his objective observations and independent documentary review. By contrast, the two psychiatrists retained by defendant based their opinions exclusively upon defendant's own statements made to them during interviews, without providing any objective proof of de-

fendant's alleged incapacity. Indeed, defendant's psychiatrists openly acknowledged that they did not personally observe any of the diagnosed symptoms during the interviews, and one of the psychiatrists acknowledged that additional information would have been useful for her to perform a complete evaluation of defendant's competency. County Court credited the opinions of the People's psychiatrist over those of defendant's, citing to the failure of defendant's psychiatrists to provide sufficient support for their diagnoses and their lack of experience and understanding regarding competency examinations. Having observed and interacted with defendant during the course of the proceedings, the court further found conduct and responses on the part of defendant that evinced his understanding of the proceedings and ability to assist in his own defense. According deference to County Court's credibility determinations concerning the conflicting evaluations, and upon our review of the record, we find no basis upon which to disturb the court's ruling that defendant was fit to stand trial (*see People v Phillips*, 16 NY3d at 517-518; *People v Kendall*, 91 AD3d at 1192-1193; *People v Passaro*, 86 AD3d 717, 718-719 [2011]; *People v Campbell*, 279 AD2d at 798).

We turn next to defendant's challenge to County Court's *Molineux* rulings, which permitted the People to introduce evidence of defendant's prior acts of domestic violence against the victim. "Evidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity. Where there is a proper nonpropensity purpose, the decision whether to admit such evidence rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (*People v Leeson*, 12 NY3d 823, 826-827 [2009] [internal quotation marks, brackets, ellipses and citations omitted]; *see People v Westerling*, 48 AD3d 965, 966 [2008]; *People v Miles*, 36 AD3d 1021, 1022-1023 [2007], *lv denied* 8 NY3d 988 [2007]). Here, County Court properly found that evidence regarding prior instances of defendant's abusive and controlling behavior toward the victim were relevant and material to the issues of intent, motive and the absence of accident and provided necessary background information concerning the tumultuous relationship between defendant and the victim (*see People v Womack*, 143 AD3d 1171, 1173 [2016], *lv denied* 28 NY3d 1151 [2017]; *People v Pham*, 118 AD3d 1159, 1161 [2014], *lv denied* 24 NY3d 1087 [2014]; *People v Lubrano*, 117 AD3d 1239, 1241 [2014], *lv denied* 25 NY3d 990 [2015]; *People v Burkett*, 101 AD3d 1468, 1470-1471 [2012], *lv denied* 20 NY3d 1096 [2013]). The court also engaged in a proper balancing of the probative value of the evidence

against its prejudicial effect (*see People v Lubrano*, 117 AD3d at 1241; *People v Thibeault*, 73 AD3d 1237, 1241 [2010], *lv denied* 15 NY3d 810 [2010], *cert denied* 562 US 1293 [2011]; *compare People v Elmy*, 117 AD3d 1183, 1187 [2014]), and its determination that the probative value far outweighed any prejudice to defendant does not constitute an abuse of discretion in view of "the circumstantial nature of the case and the temporal proximity between the victim's death and the subject incidents" (*People v Morgan*, 149 AD3d 1148, 1149 [2017]; *see People v Doyle*, 48 AD3d 961, 964 [2008], *lv denied* 10 NY3d 862 [2008]; *People v Williams*, 29 AD3d 1217, 1219 [2006], *lv denied* 7 NY3d 797 [2006]). Furthermore, County Court instructed the jury as to the permissible uses of the subject evidence at the time of the relevant testimony and again during its final charge, thereby limiting the prejudicial effect of such proof (*see People v Morgan*, 149 AD3d at 1149; *People v Womack*, 143 AD3d at 1174; *People v Burkett*, 101 AD3d at 1471). Therefore, we discern no error in County Court's *Molineux* rulings.

Defendant also asserts that his conviction is against the weight of the evidence. If, in conducting a weight of the evidence review, we conclude that an acquittal would not have been unreasonable, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" in order to decide whether the jury was justified in finding the defendant guilty beyond a reasonable doubt (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; *see People v Kancharla*, 23 NY3d 294, 302-303 [2014]; *People v Danielson*, 9 NY3d 342, 348 [2007]). As relevant here, "a person is guilty of manslaughter in the first degree when he or she, with intent to cause serious physical injury to the victim, causes the victim's death" (*People v Kenyon*, 108 AD3d 933, 937 [2013], *lv denied* 21 NY3d 1075 [2013]; *see* Penal Law § 125.20 [1]). A defendant's intent to cause serious physical injury "may be inferred from his or her conduct and from the surrounding circumstances" (*People v Cole*, 150 AD3d 1476, 1481 [2017] [internal quotation marks and citation omitted]; *see People v Gordon*, 23 NY3d 643, 650 [2014]; *People v Rogers*, 94 AD3d 1246, 1250 [2012], *lv denied* 19 NY3d 977 [2012]).

At trial, the People presented evidence that defendant claimed during a police interview that, while he was assisting the victim—who suffered from multiple sclerosis—descend a four-step staircase to leave the house, she slipped and fell

forward into the snow at the bottom of the stairs. According to defendant, he then called 911 and thereafter removed some plywood sheets from a truck parked nearby and built a shelter around the victim to shield her from the elements. Defendant's account of the events, however, was at odds with the testimony of a first responder to the incident and a paramedic who treated the victim while en route to the hospital. The first responder testified that, when she arrived at the scene, she observed that the victim was lying face down in the snow with her head pointing toward the house and was not appropriately dressed for the cold weather, wearing only a pair of sneakers, spandex pants, a T-shirt and sports bra. The first responder also testified that the victim's T-shirt and bra were rolled up above her breasts and almost to her neck line and that the victim had sustained scratches on her back that appeared inconsistent with having fallen down the stairs. The paramedic testified that he observed injuries to the victim's head, face, neck and body and that the victim appeared to have sustained "pretty severe trauma." Defendant's account was further undermined by the testimony of the victim's neighbors, who testified that they saw sheets of plywood leaning against the front steps of the victim's house at around 8:00 a.m.—approximately 40 minutes before the 911 call was made.

With regard to the victim's injuries, the pathologist who conducted an autopsy on the victim testified that the victim died from "multiple blunt force injuries and strangulation with bilateral subdural hemorrhages . . . and cerebral edema." The pathologist explained that there were two separate injuries to the victim's brain that were inflicted by blunt force trauma and that the injuries both contributed to the victim's death and could not have resulted from a single fall. The pathologist testified further that the victim's neck area bore injuries that were consistent with having been strangulated, and that the bruises on the victim's arms were indicative of her being grabbed tightly by her arms during a fight. The pathologist also opined that the scratches on the victim's back, hemorrhaging on her ankles and the fact that the victim's shirt and bra were rolled up over her chest supported an inference that the victim had been held by her ankles and dragged a certain distance.

With respect to the element of intent, the People called three witnesses who testified to defendant's previous abusive and controlling behavior toward the victim. The victim's son testified to a prolonged and escalating argument between the victim and defendant in December 2012, during which defendant called the victim derogatory names such as an "F"ing bitch and

an F'ing whore" and was thereafter removed from the victim's residence by the police. The People also presented evidence that, approximately two months before the incident, a police officer was dispatched to the victim's home to check on her welfare and, upon arriving there, encountered defendant, observed bruises on the victim's face and then removed defendant from the victim's residence. Lastly, the fiancée of the victim's brother testified that, about three days before the incident, the victim sent her a photo depicting extensive bruises on the victim's face. In our view, although it would not have been unreasonable for the jury to have accepted the defense's theory that the victim had died from an accidental fall, viewing the evidence in a neutral light and according due deference to the jury's credibility assessments (*see People v Poulos*, 144 AD3d 1389, 1390-1391 [2016]; *People v Morris*, 140 AD3d 1472, 1475 [2016], *lv denied* 28 NY3d 1074 [2016]), we find that defendant's conviction was amply supported by the weight of the evidence (*see People v Burkett*, 101 AD3d at 1469-1470; *People v Rogers*, 94 AD3d at 1250-1251; *People v Thompson*, 92 AD3d 1139, 1140-1141 [2012], *affd* 21 NY3d 555 [2013]; *People v Wlasiuk*, 90 AD3d 1405, 1406-1407 [2011]).

Nor are we persuaded that County Court erred in failing to instruct five spectators in the courtroom who were wearing purple ribbons that signified their opposition to domestic violence to remove the ribbons. The Court of Appeals recently addressed spectator conduct in *People v Nelson* (27 NY3d 361 [2016], *cert denied* 580 US —, 137 S Ct 175 [2016]), wherein the Court instructed that "[w]hether [a] trial court should intervene, and what intervention is appropriate, must depend upon the facts and circumstances of each particular case" (*id.* at 369). In deciding whether and how to intervene in spectator conduct, a trial court may consider a number of factors, including, but not limited to, "the particular nature of the spectator conduct at issue; how many spectators are involved; the duration of the conduct; whether the involved spectators have called attention to themselves in some way; where the spectators are seated in the courtroom; whether the jury can see or did see the spectator conduct; . . . [and] whether the spectator conduct is the result of some intentional effort to influence the jury or merely an unintended display of emotion" (*id.*). Given the trial court's superior ability to view all of the surrounding circumstances and fashion an appropriate intervention, we review that court's action or inaction for an abuse of discretion (*see id.* at 370).

Here, in refusing to prohibit the five spectators from wearing

purple ribbons, County Court properly considered the relevant factors and found that, while the spectators frequently appeared in the courtroom, they sat away from and never interrupted the jury and their ribbons were not conspicuous. Further, upon being advised by defendant that the spectators had greeted certain jurors in the courthouse elevator by nodding or saying "good morning," County Court admonished the spectators to avoid any contact with the jurors and stay away from the areas where the jurors were present, while noting that no jurors had ever claimed that anyone attempted to converse with them or influence their decisions. Given that the ribbons at issue were not conspicuous and the absence of any record evidence indicating that the spectators had ever attempted to draw attention to themselves at trial or engage in any egregious behavior, County Court properly exercised its discretion in refusing to prohibit the conduct (*see People v Holiday*, 142 AD3d 625, 626 [2016]; *People v Jones*, 139 AD3d 1189, 1191 [2016], *lv denied* 28 NY3d 932 [2016]).

As a final matter, we reject defendant's contention that the maximum sentence imposed was harsh and excessive. While County Court's remarks at sentencing regarding the punishment that defendant would receive outside of the judicial system were better left unsaid, we do not find them to be "so 'intemperate' that modification of the sentence is required" (*People v Pimentel*, 108 AD3d 861, 863-864 [2013], *lv denied* 21 NY3d 1076 [2013]; *see People v Lopez*, 51 AD3d 1210, 1211 [2008]; *compare People v Theodore*, 113 AD3d 703, 704 [2014]). Considering the violent nature of the offense, defendant's lack of remorse and his extensive criminal history, which includes an incident wherein he assaulted his pregnant ex-girlfriend with a baseball bat, we discern neither an abuse of discretion nor extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see People v Coley*, 129 AD3d 1327, 1330 [2015], *lv denied* 26 NY3d 927 [2015]; *People v Burkett*, 101 AD3d at 1473; *People v Morey*, 304 AD2d 855, 856 [2003], *lv denied* 100 NY2d 564 [2003]).

Garry, Rose, Clark and Rumsey, JJ., concur. Ordered that the judgment is affirmed.