People v Durham (2024 NY Slip Op 01842)

People v Durham

2024 NY Slip Op 01842

Decided on April 4, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 4, 2024

113391
[*1]The People of the State of New York, Respondent,
v
James E. Durham, Appellant.

Calendar Date:February 14, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, McShan and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
F. Paul Battisti, District Attorney, Binghamton (Benjamin E. Holwitt of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Broome County (Joseph F. Cawley, J.), rendered January 18, 2022, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the second degree.
In 2020, defendant was charged by indictment with criminal possession of a weapon in the second degree in connection with an incident that occurred in July 2020 in the City of Binghamton, Broome County. Specifically, the charge resulted from a police investigation of "shots fired" in front of a local restaurant. Early that morning, a fight had occurred in front of the restaurant and an employee of the restaurant saw defendant on the ground with a gun tucked into his pants. The employee restrained defendant on the sidewalk until the police arrived. Thereafter, another individual obtained the gun and fired it prior to leaving the scene. After a jury trial, defendant was convicted as charged and was subsequently sentenced, as a second felony offender, to a prison term of 9 years to be followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence as it was not sufficiently established that defendant possessed the gun. To establish criminal possession of a weapon in the second degree, the People were required to prove that defendant possessed a loaded firearm outside of his home or place of business (see Penal Law 265.03 [3]).
Testimony from an employee who was working as a bouncer at the restaurant the night of the incident testified that he was around the corner from where the fight occurred when he heard a commotion in front of the restaurant. He testified that he proceeded around the corner and observed a "big fight." The employee explained that while assessing the situation he saw defendant on the ground holding onto a gun with a wooden handle that was tucked into his waistband. Two other witnesses testified that, while approaching the fight, they heard people yelling that someone had a gun. After rolling defendant onto his stomach, the employee grabbed defendant's arms so that he could not grab the gun and restrained him until police arrived. While defendant was restrained, another individual grabbed and subsequently fired the gun. Testimony from other witnesses established that, soon after, a police officer stopped an individual who matched the description of the shooter. This individual informed the police officer that the gun was under a nearby car and the police officer was able to retrieve the gun based upon his conversation with the individual. The People introduced footage from the body camera of one of the responding police officers in which it sounds as though defendant stated that he "had a gun."[FN1] Footage from a neighboring restaurant's security camera was also admitted into evidence, in which one can see the fight commencing and the other individual shooting the gun and walking away from [*2]the scene.
Based on the foregoing, "viewing the evidence in the light most favorable to the People, a valid line of reasoning existed through which the jury could have found that" defendant possessed the gun (People v Jenkins, 215 AD3d 1118, 1121-1122 [3d Dept 2023], lv denied 40 NY3d 997 [2023]; see People v Lorenz, 211 AD3d 1109, 1110 [3d Dept 2022], lv denied 39 NY3d 1112 [2023]). As to the weight of the evidence, defendant, among other things, questions the credibility of the employee who restrained defendant as well as one of the police officers who heard defendant admit to having the gun. While a different verdict would not have been unreasonable had the jury discredited the People's witnesses (see People v Ashe, 208 AD3d 1500, 1504-1505 [3d Dept 2022], lv denied 39 NY3d 961 [2022]; People v Colter, 206 AD3d 1371, 1375 [3d Dept 2022], lv denied 38 NY3d 1149 [2022]), "when we view the evidence in a neutral light and accord deference to the jury's credibility determinations, we are not persuaded that the verdict is against the weight of the evidence" (People v Colter, 206 AD3d at 1375; see People v Taylor, 207 AD3d 806, 809 [3d Dept 2022], lv denied 39 NY3d 942 [2022]).
Defendant also argues that County Court committed reversible error by failing to inquire whether defendant knowingly, voluntarily and intelligently waived his right to testify at trial. "The constitutional right to testify in one's own defense is personal to the defendant and, while the decision to testify or not to testify is often made in consultation with counsel, the defendant retains ultimate decision-making authority as to whether to waive this right. Any such waiver must be knowing, voluntary and intelligent" (People v Morgan, 149 AD3d 1148, 1152 [3d Dept 2017] [internal quotation marks and citations omitted]). With the exclusion of "exceptional, narrowly defined circumstances," a "trial court does not have a general obligation to sua sponte ascertain if the defendant's failure to testify was a voluntary and intelligent waiver of his or her right" (People v Robles, 115 AD3d 30, 34 [3d Dept 2014] [internal quotation marks, brackets and citations omitted], lv denied 22 NY3d 1202 [2014]).
During the examination of the People's witnesses, there was a disagreement between defendant and counsel about the handling of the cross-examination of a witness, resulting in an "impasse" in their ability to communicate. However, counsel thereafter assured County Court that they seemed "to be better" in communicating. Before the People's final witness testified, the court asked how the defense would like to proceed and defense counsel replied that "we [are] still in the process of discussing that." At the close of the People's proof, the court once again asked how defendant would like to proceed, and, after a recess for counsel to meet with his client, counsel advised that the defense would "not be presenting a case." The court confirmed with defendant that he understood that he had [*3]a right to testify and asked defendant, with that understanding, whether he had chosen not to testify, and defendant replied, "Yes." Assuming defendant's argument in this respect does not require preservation (see People v Wheeler, 203 AD3d 1330, 1336 [3d Dept 2022], lv denied 38 NY3d 1075 [2022]; People v Pilato, 145 AD3d 1593, 1595 [4th Dept 2016], lv denied 29 NY3d 951 [2017]), "under these circumstances, the court was not obligated to ascertain if defendant's failure to testify was a voluntary and intelligent waiver of his right" (People v Wheeler, 203 AD3d at 1336-1337; see People v Calkins, 171 AD3d 1475, 1476 [4th Dept 2019], lv denied 33 NY3d 1067 [2019]).
Egan Jr., J.P., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Between the tone of defendant's voice and background noise, it is difficult to discern everything defendant was saying. This footage was admitted into evidence.