People v Deas (2025 NY Slip Op 01263)

People v Deas

2025 NY Slip Op 01263

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

113590
[*1]The People of the State of New York, Respondent,
v
Eric N. Deas, Appellant.

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

John R. Trice, Elmira, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Powers, J.
Appeal from a judgment of the County Court of Tompkins County (John Rowley, J.), rendered April 8, 2022, upon a verdict convicting defendant of the crimes of aggravated sexual abuse in the second degree and assault in the first degree.
In April 2021, defendant was charged by indictment with assault in the first degree and aggravated sexual abuse in the second degree based upon allegations that, during a sexual interaction with the victim, he inserted at least one of his fingers into the victim's rectum by forcible compulsion resulting in the victim sustaining serious injuries. Before trial, upon the People's Molineux proffer, County Court permitted the People to introduce evidence related to three separate prior incidents of domestic violence perpetrated upon the victim by defendant, although disallowing related medical evidence. Defendant proceeded to trial and, after an initial mistrial, was convicted as charged. Defendant was thereafter sentenced to a prison term of 15 years, to be followed by 10 years of postrelease supervision, on the aggravated sexual abuse conviction and to a concurrent term of 15 years in prison, to be followed by five years of postrelease supervision, on the assault conviction. Defendant appeals.
Defendant does not dispute that he had a sexual encounter with the victim, nor does he contest that she suffered serious injury. Instead, defendant argues that the injury she sustained was the result of an accident that occurred during this consensual sexual encounter. Thus, he maintains that the verdict is against the weight of the evidence. It is well settled that, when considering a challenge to the weight of the evidence, we "must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024] [internal quotation marks and citations omitted]). In doing so, we "consider[ ] the evidence in a neutral light and defer[ ] to the [jury]'s credibility assessments" (People v Holmes, 227 AD3d 1184, 1186 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 971 [2024]).
As is relevant here, "[a] person is guilty of aggravated sexual abuse in the second degree when he or she inserts a finger in the . . . rectum or anus of another person causing physical injury to such person . . . [b]y forcible compulsion" (Penal Law § 130.67 [1] [a]). And a person is guilty of assault in the first degree when, "[i]n the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he [or she] . . . causes serious physical injury to a person other than one of the participants" (Penal Law § 120.10 [4]).
The victim testified that she [*2]and defendant had been in a romantic relationship. Although the relationship began positively, as it progressed defendant displayed jealousy and conflicts arose between them, culminating in incidents of domestic violence. Regarding the events in question, the victim explained that she and defendant met at a hotel and, after engaging in an argument, began a consensual sexual encounter. However, shortly into this encounter defendant attempted to insert his penis into her rectum. The victim said no, but still defendant continued to try. He then told the victim to move into a different position and she did so. The victim felt what she described as "horrible pressure" in her anus, and she continued to protest, saying no multiple times. The victim struggled to get away from defendant, but he held her down and, as she continued to struggle, she fell off the bed and felt severe pain. Defendant subsequently took his hand and wiped what she believed to be either blood or stool on her face, stood up and walked into the bathroom. The victim testified that she noticed that she was bleeding and attempted to clean herself. Defendant repeatedly accused her of cheating and stated that because he had inserted his "whole fist" into her this evidenced her infidelity, all while laughing. Defendant then would not let her leave when she attempted to do so, going so far as taking the telephone when she attempted to call for help. When the victim was subsequently able to leave, she ran across the street and located individuals who called 911. The victim described that she was taken to the hospital where an exam was performed, and that she has since required extensive medical treatment, including multiple surgeries, to address the injuries she sustained that night.
In his own testimony, defendant denied those instances of domestic violence the victim had testified to and attempted to explain alternative causes of the victim's prior injuries. As to the night in question, defendant testified consistently with the victim as to meeting her at a hotel, engaging in an argument and partaking in a consensual sexual encounter. However, defendant maintained that during this sexual encounter he inserted his fingers into the victim's anus and vagina and, while doing so, asked the victim why she was so "open," at which point the victim jumped away. The victim then told defendant that she was bleeding, and defendant admitted to wiping something on her face and making a debasing comment. Defendant also admitted to asking the victim if she was cheating on him, but expressly denied stating that he had put his fist into her. He explained that the victim then went outside to smoke a cigarette and when he opened the door to check on her, she was not there so he went home. Notably, defendant testified that he believed the victim's injuries were caused by his fingernails as she jumped back from him. Moreover, as to the recorded interview of defendant that was admitted during trial, defendant explained [*3]that when he stated to the interviewing officer that he had inserted his hand into the victim's anus, he had meant his fingers.
To begin, defendant appears to contend that the jury did not give appropriate weight to the testimony of the nurse who initially treated the victim and conducted the sexual assault nurse examination. This individual testified that she had only seen one other similar injury in her career, which was reported to be the result of an accident, thereby suggesting — according to defendant — an accidental cause here. Even so, one of the victim's treating physicians opined that the injury sustained was indicative of a forceful and nonvoluntary event. This ostensibly conflicting testimony presents a credibility determination entirely within the province of the jury. While another verdict would not have been unreasonable, had the jury credited defendant's recitation of the events in question (see People v Reed, 210 AD3d 1313, 1314 [3d Dept 2022], lv denied 39 NY3d 1079 [2023]; People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]), the jury evidently credited the victim's presentation of what occurred. Thus, viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the verdict is not against the weight of the evidence as to either crime (see People v Horton, 181 AD3d 986, 989 [3d Dept 2020], lv denied 35 NY3d 1045 [2020]; People v Lancaster, 143 AD3d 1046, 1049 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]).
We next address defendant's challenge to County Court's Molineux ruling permitting the People to introduce evidence of prior incidents of domestic violence perpetrated upon the victim by defendant. The People sought to introduce three separate incidents of domestic violence — one verbal and two physical — as well as medical records from the treatment of the victim's resulting injuries. Defendant objected on the basis that admission of this evidence would be prejudicial. Although indicating that the People's request as to the verbal abuse was vague, the court granted the People's request as to all three incidents. However, the court did deny admission of related medical records because the victim was able to testify as to her own injuries. The victim subsequently testified as to these incidents.
"While not admissible to demonstrate bad character generally or a propensity to commit the charged crimes, evidence of uncharged crimes or bad acts may be admitted if it establishes an element of the crime charged, is inextricably interwoven with the charged crime, provides necessary background, completes a witness's narrative, or falls within the five general Molineux exceptions" (People v Wells, 224 AD3d 1155, 1159 [3d Dept 2024] [internal quotation marks, ellipses and citations omitted], lv denied 42 NY3d 941 [2024]). "[P]rior bad acts are more likely to be relevant and probative [in cases involving domestic violence] because the aggression and bad acts are [*4]focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident" (People v Conklin, 158 AD3d 973, 975 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 31 NY3d 1080 [2018]; see People v LaDuke, 204 AD3d 1083, 1088 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]).
Although implicit in its analysis, we do not find that County Court abused its discretion in permitting this evidence as it was relevant and probative to defendant's account that this was an accident (see People v Morgan, 230 AD3d 864, 869 [3d Dept 2024], lv granted 42 NY3d 973 [2024]; People v Cole, 215 AD3d 1064, 1066 [3d Dept 2023], lv denied 40 NY3d 927 [2023]). The court also appropriately balanced the probative value of the evidence against the prejudicial impact to defendant by precluding the associated medical evidence, which may have tended to corroborate the victim's testimony, instead allowing the jury to independently weigh the credibility of the victim's testimony. Defendant failed to preserve his argument that the court erred in failing to issue a limiting instruction at the time of the victim's testimony as he made no such request (see People v Van Demps, 118 AD3d 1146, 1147 [3d Dept 2014], lv denied 23 NY3d 1061 [2014]; People v Marshall, 65 AD3d 710, 712 [3d Dept 2009], lv denied 13 NY3d 940 [2010]). Nevertheless, the court provided a limiting instruction as part of its final instruction, which the jury is presumed to have followed (see People v Morris, 21 NY3d 588, 598 [2013]; People v Cole, 215 AD3d at 1067), thereby limiting the prejudicial effect of this evidence (see People v Babcock, 152 AD3d 962, 965 [3d Dept 2017], lv denied 30 NY3d 947 [2017]).
Finally, defendant maintains that he was denied meaningful representation based upon trial counsel's failure to object, request a limiting instruction or move for a mistrial when the victim testified in violation of the Molineux ruling. We note that County Court did permit the victim to testify as to defendant's verbal abuse as part of the Molineux ruling and, relatedly, trial counsel lodged objections to two of the lines of testimony defendant presently takes issue with. In any event, assuming the victim's testimony was in violation of that ruling, we do not find that any purported failing on the part of trial counsel to object thereto deprived defendant of meaningful representation. Defendant failed to establish that trial counsel's lack of such objection was not a strategic attempt to avoid bringing added attention to or unintentionally emphasizing this testimony (see People v Njoku, 218 AD3d 1047, 1052 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Horton, 181 AD3d at 997). Thus, viewing the representation in totality and at that time, we find that defendant was provided meaningful representation as trial counsel, among other things, delivered cogent opening and closing arguments, conducted meaningful cross-examination and presented [*5]an all-around zealous defense (see People v Leppanen, 218 AD3d 995, 1003 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]).
Garry, P.J., Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.